[S. F. No. 10721. In Bank.—July 31, 1924.]

EDWARD F. TREADWELL, Respondent, v. J. LEROY NICKEL et al., Appellants.

[1] ATTORNEY'S FEES—CONFLICTING EVIDENCE—APPEAL.—In an action to recover attorney's fees, where there is a conflict in various material parts of the evidence, from which widely divergent conclusions may be drawn, but the findings of the jury are based upon reasonable inferences drawn from the facts proved, the verdict cannot be disturbed on appeal.

1. See 10 Cal. Jur. 1172; 2 R. C. L. 204.

[2] ID.—EXECUTED ORAL AGREEMENT — MODIFICATION. — A contract in writing may be altered by an executed oral agreement; and if an oral agreement, having for its object the exclusion of certain services from the terms of a previous written agreement of employment, is fully executed, it works a modification of the original contract of employment.

[3] ID.—EXTINGUISHMENT OF CONTRACT — RESCISSION. — A contract is extinguished by its rescission, which may be had by consent of the parties, and a parol agreement to rescind a contract even under seal is good if executed.

[4] ID.—ABANDONMENT OR RESCISSION — PROOF — ACTS OF PARTIES.— A parol agreement to abandon or rescind a written contract may be inferred from the acts of the parties, and whether there has been an abandonment and rescission of a contract, as so evidenced, is a question of fact for the jury.

[5] ID.—SUFFICIENCY OF EVIDENCE—APPEAL.—In an action to recover attorney's fees, where the issue is whether or not the services upon which the suit is based were rendered under a certain written contract of employment, or under a modification thereof, or under a new contract of employment, the power of the court on appeal begins and ends with the inquiry whether there is substantial evidence to support the conclusion reached by the jury, and if, on any material point, the testimony is in conflict, it must be assumed that the jury resolved the conflict in favor of the prevailing party.

[6] ID.—EXECUTED ORAL CONTRACT — EVIDENCE. — The rule that clear and satisfactory proof of an executed oral agreement is required must be construed in such a case in the light of the fundamental rule that a preponderance of the evidence controls in a civil case.

[7] ID.—QUESTIONS FOR TRIAL COURT.—The sufficiency of the evidence to establish a given fact, even where the law requires proof of the facts to be clear and convincing, is primarily a question for the trial court and the jury, and if there is substantial evidence to support the conclusion reached, the finding is not open to review on appeal.

[8] ID. — EXPRESS CONTRACT — INSTRUCTIONS. — In such a case there is no error in instructing the jury that whether or not there was an express agreement by the defendants to pay plaintiff the reasonable value of his services was a question of fact to be determined

2. Parol evidence to add to or vary writing, note, 56 Am. St. Rep. 659. See, also, 6 Cal. Jur. 375.

3. See 6 Cal. Jur. 382; 6 R. C. L. 922.

6. See 10 Cal. Jur. 790; 10 R. C. L. 896, 1012.

7. See 10 Cal. Jur. 1167.

by it "from all the evidence in the case," where there was evidence which would support an inference that the defendants expressly agreed to pay plaintiff.

[9] ID.—EXPRESS ORAL CONTRACT.—An express contract is one the terms of which are stated in words, but such a contract need not be in writing.

[10] ID. — ORAL CONTRACT — INTERPRETATION — QUESTION OF FACT. — When the contract relied on is oral, its interpretation in the first instance is a question of fact to be determined by the jury.

[11] ID.—INSTRUCTIONS—REFERENCE TO PARTICULAR EVIDENCE.—While instructions emphasizing particular portions of evidence are objectionable, in such a case the giving of this character of instructions will not be held reversible error, where under the general instructions, contained in the full and comprehensive charge, the jury must have known that the evidence referred to in the objectionable instructions, with all other evidence of facts and circumstances in the case, was to be considered by them.

[12] ID.—INSTRUCTIONS — PLEADINGS — BILL OF PARTICULARS.—Where the court instructs the jury in such a case that the issues of fact for its determination were presented by the denials made in the answer to the allegations of the complaint and by the affirmative matter pleaded by the defendants, the complaint that the instruction withdrew from the jury's consideration, in determining the issues of fact, plaintiff's amended bill of particulars, cannot be sustained, an instruction having been given, at defendants' request, immediately thereafter to the effect that an amended bill of particulars which plaintiff furnished the defendants segregated the various services performed, and placed a value upon each of them aggregating a certain sum which was reduced in the complaint to a certain amount. If defendants desired any further or more explicit instructions with reference to the bill of particulars, they should have asked that such be given, and not having done so, they cannot be heard to complain that it was not given.

[13] BILLS OF PARTICULARS—AMPLIFICATION OF COMPLAINT—EVIDENCE. A bill of particulars is to be regarded as an amplification of the complaint, and for the purpose of determining plaintiff's right to recovery, or the admissibility of evidence that might be offered in support of his claim, is to be considered as if it had been incorporated in the complaint as originally filed.

[14] ATTORNEYS' FEES — EXPERT TESTIMONY—INSTRUCTIONS.—In such a case, where the plaintiff called a number of experts to testify to the value of his services, it was not error for the trial court to

---

9.   See 6 Cal. Jur. 20.

10.   See 6 Cal. Jur. 328.

13.   See 21 R. C. L. 480.

refuse to give an instruction requested by defendants to the effect that the jury should disregard the testimony of an expert witness unless it believed that all the material facts, upon which a hypothetical question propounded to the experts was based, were true.

[15] ID.—WEIGHT OF EXPERT TESTIMONY.—Expert testimony is to be given the weight to which it appears in each case to be justly entitled and the law makes no distinction between that kind of testimony and evidence of other character.

- [16] ID. — HYPOTHETICAL QUESTION — VARIANCE FROM FACTS — QUESTIONS OF FACT. — Opinion evidence does not necessarily become wholly valueless because there is some variance between the facts assumed in the hypothetical question upon which it is based and the actual facts proven, the truth or falsity of the purported facts in the question, as well as the weight of the opinion of the expert witness, being for the jury, under proper instructions, to determine.

[17] TRUSTEES—COMPENSATION—ATTORNEYS'S FEES.—Compensation of trustees is confided to the discretion of the trial courts, and an attorney for such trustees is entitled to the reasonable value of his legal services as a proper expense out of the trust fund.

[18] EVIDENCE — HYPOTHETICAL QUESTIONS — STATEMENT OF FACTS.— Considerable latitude must be allowed in the choice of facts as the basis upon which to frame a hypothetical question. Every hypothesis contained in the question should have some evidence to sustain it; but it is not necessary to include a statement of all the evidence, as the question may be framed upon any theory of the questioning party which can be deduced from the evidence, and the statement may assume any facts, within the limits of the evidence, upon which the opinion of the expert is desired, and it may omit any facts not deemed by the questioner material to the inquiry.

[19] INSTRUCTIONS — CONFLICT — WHEN NOT REVERSIBLE ERROR.—The giving of conflicting instructions upon a material point is undoubtedly error, but a party may not be heard to complain that instructions are inconsistent, if it appear that the inconsistency arises through the giving of instructions at his request which are inconsistent with, or contradictory of other instructions given at the request of the other party which are pertinent to the issues of the case, and which are correct statements of the law.

[20] ID.—LACK OF INJURY—APPEAL.—A conflict in instructions which does not operate injuriously to the appellant is not ground of reversal.

(1) 4 C. J., p. 860, sec. 291.   (2) 13 C. J., p. 594, sec. 610.   (3) 13 C. J., pp. 600, 601, 623, secs. 622, 623, 683.   (4) 13 C. J., pp. 780, 789, secs. 985, 1010 (1926 Anno.).   (5) 4 C. J., pp. 772, 844, secs. 2718, 2830.   (6) 13 C. J., p. 776, sec. 977.   (7) 4 C. J., pp. 843, 853, secs. 2830, 2834.   (8) 6 C. J., p. 764, sec. 358.   (9) 13 C. J., p. 240, sec. 6.   (10) 13 C. J., p. 787, sec. 998.   (11) 4 C. J., p. 1039, sec. 3020.   (12) 3 C. J., p. 850, sec. 756.   (13) 31 Cyc., pp. 565, 571.   (14) 22 C. J., p. 732, sec. 823.   (15) 22 C. J., p. 736, sec. 825 (1926 Anno.).   (16) 22 C. J., pp. 716, 728, secs. 804, 823.   (17) 39 Cyc., pp. 480, 481.   (18) 22 C. J., p. 714, sec. 804.   (19) 38 Cyc., pp. 1604, 1607.   (20) 38 Cyc., p. 1608.

APPEAL from a judgment of the Superior Court of San Mateo County. Benj. K. Knight, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, Frank D. Madison, Alfred Sutro and Eugene M. Prince for Appellants.

Lucien Shaw, Franklin Swart, R. S. Laughlin and E. F. Treadwell for Respondent.

WASTE, J.—Plaintiff brought suit for $300,000, alleged to be the reasonable value of his services as attorney for the defendants in connection with various inheritance and federal estate tax matters growing out of the trust created by Henry Miller, and covering a period of nearly six years from October, 1916, to August, 1922, and including, also, various matters in connection with the administration of the estate of Henry Miller. The case was tried before a jury upon the issues raised by plaintiff's complaint, his amended bill of particulars and defendants' answer, and resulted in a verdict and judgment awarding plaintiff the amount prayed for and costs, from which judgment defendants have appealed.

In the year 1907, plaintiff was employed "to act as general counsel for" Miller & Lux Incorporated, at a designated monthly salary. The contract of employment is embodied

in a series of letters passing between plaintiff and the defendant J. Leroy Nickel, as vice-president of the corporation. In a letter dated May 14, 1907, plaintiff proposed to take charge of all the general business of the company, to be associated in all cases in which other counsel might be employed, and to devote all his time to the company's business. He also proposed that "any work done by me [plaintiff] for stockholders of the company to be done without extra compensation,—the same being a credit to Miller & Lux Incorporated." In reply, and under date of May 17th, Mr. Nickel wrote to plaintiff: "Yours of May 14th is received. In reply I beg to say you do not state the terms under which Miller & Lux Incorporated engaged your services to act as general counsel exactly in accordance with my understanding. You limit the service to work done for stockholders of the Company. The arrangement may be more correctly stated as follows: Any business or service of any nature, which you may be called upon to render either to Miller & Lux Incorporated, or for any other interests which its officers may deem proper to place in your hands shall be attended to by you, for which you are to receive a monthly compensation of $350.00 net per month, and it is understood that no extra compensation shall be paid for services rendered in addition to the business of Miller & Lux Incorporated." Replying to this letter, on May 18th plaintiff wrote to Mr. Nickel: "Your statement of the basis of our agreement is entirely satisfactory to me." Under this contract plaintiff became general counsel for Miller & Lux Incorporated. His salary was increased from time to time, in addition to which Miller & Lux provided his offices, necessary stenographers, clerks, and assistants, and paid other office expenses.

Prior to April 17, 1913, Henry Miller was practically the sole owner of the capital stock of Miller & Lux Incorporated, a Nevada corporation. On the last-mentioned date, by a deed of trust he transferred this stock to his daughter, the defendant Nellie Miller Nickel, and her husband, the defendant J. Leroy Nickel, in trust, they to collect the rents, issues and profits thereof and pay the income therefrom to Henry Miller during his life, and after his death to sell sufficient stock to pay certain specific bequests, aggregating about $300,000, the income from the property to be paid to

the trustees during their lives. The deed contained further
provisions for the disposition of the property after the death
of the trustees. On the same day Mr. Miller also made his
last will and testament, directing that certain real property
be disposed of, and leaving the residue of his estate to the
defendants to be held upon the same trusts as provided
in the deed of trust.

Henry Miller died on October 14, 1916, being at the time
of his death a resident of the state of California. At the
instance of the defendants, plaintiff filed the will for pro-
bate, recorded the deed of trust, and assumed entire
charge of all legal matters and litigation connected with
the estate and the trust. The estate of Henry Miller, ex-
clusive of the Miller & Lux stock, which was appraised by
federal and state officials in varying amounts up to $48,-
000,000, and which had been estimated in 1910 by Mr. Miller
himself at about $32,000,000, consisted of three pieces of
land and certain cash, all appraised at approximately
$34,000. The state of California made claim against Miller's
estate for inheritance taxes on a property valuation of
$40,000,000, on the ground that the deed of trust was made
in contemplation of death. The state of Nevada likewise
contended that an inheritance tax was due upon the shares
of stock of Pacific Live Stock Company, a California corpo-
ration owning a large amount of real and personal property
in the state of Nevada, all of the stock of that company
being held by Miller & Lux Incorporated. Federal estate
taxes, also, were imposed upon the property in the sum of
nearly $4,000,000, based upon an appraised value of over
$39,000,000. Through failure to file a return, a penalty
was levied in an amount equal to half of the tax, which, to-
gether with interest and a claimed additional penalty,
brought the entire tax to over $6,500,000, demand for the
payment of which was made by the collector of internal
revenue, with the threat that unless the tax was paid within
ten days the government would proceed to seize and sell the
property without suit. Plaintiff expended a large amount of
time and labor in contesting the various tax claims and in an
effort to have their validity determined, the litigation ex-
tending over a period of nearly six years. Plaintiff contends
that through his efforts there was eliminated from the
amount of taxes, interest, and penalties claimed by the states

of California and Nevada, and the United States, more than
$17,250,000. Plaintiff was also continuously called upon to
furnish legal advice in connection with matters concerning
the estate and trust, the property value of which was ap-
praised at more than $41,000,000. Had the estate of Henry
Miller been conducted in the usual manner of probate pro-
ceedings, and not almost entirely as a trust, plaintiff would
have been entitled to an attorney's fee of more than $200,000
for conducting the ordinary matters of probate. (Code Civ.
Proc., secs. 1618, 1619.) In addition to such ordinary ser-
vices he conducted the litigation concerning the various tax
claims to a successful termination. During the pendency of
these actions it became necessary to determine upon the
amount of a reasonable attorney fee for the conduct of the
estate and trust, in order that the amount might be deducted
from the value of the estate before the inheritance and estate
taxes were computed; and the evidence shows that plaintiff
and the defendants agreed upon the sum of $300,000 as
being a reasonable attorney's fee in the matter. Plaintiff
resigned as general counsel for Miller & Lux in 1921, but
continued to handle the legal matters of the estate and
trust of Henry Miller until they were finally settled.

When the estate of Henry Miller had been finally distrib-
uted, and the inheritance tax litigation was practically
concluded, plaintiff requested Mr. Nickel to consider and
definitely fix his compensation in the matter. Nickel replied,
after considering the matter with others, that it had been
decided, as a proper recognition of plaintiff's services in
connection with the estate litigation, to present him with
the sum of $50,000. Plaintiff declined to accept this amount,
stating that in the estate tax matters it had become necessary
to fix what would be a fair compensation for his work in
that connection in order that the estate could get the benefit
of the amount of such fee as a deduction. This amount,
$300,000, he considered very conservative, and it was his
view that an amount approximating that sum should be
paid him. There was some further correspondence between
the parties relative to the fee, and no amount being paid,
plaintiff brought this action.

Although the record brought here is voluminous, con-
sisting, as it does, of many hundreds of pages of testimony,
the case is a very simple one. It is alleged in the complaint

that the defendants employed plaintiff "as their attorney to take all proceedings and give all legal advice necessary for the determination of all liens and claims against the said trust property and against the estate of the said Henry Miller, and particularly all claims of the State of California, the State of Nevada, and the United States of America to inheritance tax liens or estate tax liens upon the estate of said Henry Miller, deceased, and to perform all legal services and give all legal advice necessary in connection with the administration of said estate and trust until the final determination of said claims, and promised and agreed to pay plaintiff the reasonable value of such services." The answer denied these allegations, and by way of defense alleged that the services were performed by plaintiff under the terms of the contract with Miller & Lux. Thus the main issue was joined. In his amended bill of particulars plaintiff segregated the services rendered, and placed a value on them aggregating approximately $650,000, but waived his claim for compensation in any amount over $300,000 "for the reason that that amount was agreed upon between the plaintiff and the defendants as the reasonable value of said service." The question as to the reasonable value of the services rendered by the plaintiff was submitted to a number of able and competent attorneys, who testified in the case. Some of them advanced a lower figure than that claimed by him, but others fixed their value at amounts far in excess of that established by the verdict. Consequently the issue as to the value of the services may be considered as having been closed by the finding of the jury.

The important question in the case is whether the services rendered by plaintiff in connection with the estate and trust of Henry Miller were covered by his retainer as general counsel for Miller & Lux Incorporated, under the contract of May, 1907, and "consisted of business and service which plaintiff was called upon to render and which was placed in plaintiff's hands by defendant J. Leroy Nickel as president and managing officer of said Miller & Lux Incorporated"; or whether the services were rendered under an entirely separate and distinct contract with the defendants. We feel that no good will be accomplished by attempting a minute review of the long transcript of the evidence submitted in the court below. At the outset of the trial plaintiff sought

to introduce evidence of the circumstances surrounding the execution of the contract of May, 1907, by which he became general counsel for Miller & Lux, upon the theory that such evidence was admissible to show that the contract did not include the extraordinary services rendered by him in connection with the estate and trust. The trial court, however, was of the view that the contract "stated in plain and unequivocal terms" what Mr. Treadwell would be required to do, and, unless changed or abandoned, would include the services sued upon in this action; that to allow oral proof to be introduced on the theory contended for by the plaintiff would serve, not to explain any ambiguity appearing on the face of the contract, but to show that a meaning was intended contrary to that which did appear upon the face of the agreement itself. Consequently, the court held that it would not allow any oral testimony to be introduced merely to show the intention of the parties at the time the contract was entered into, but the evidence of an executed oral agreement subsequent to the contract might be received to show that the contract had been changed or partially abandoned; that, although conversations in 1907 were inadmissible under the parol evidence rule to vary the plain meaning of the letters constituting the contract, such conversations, if they had been referred to or repeated after the dates of the letters, might be received in evidence to show that the contract was changed after it was made.

[1] The parties introduced oral testimony, which is sharply conflicting on every material point, and certain documentary evidence. The case of the plaintiff rests largely upon his own testimony and evidence of acts of the parties extending over a period of fifteen years. Appellants contend that the evidence does not support the verdict. It requires only a casual inspection of the record to disclose that not only is there a conflict in various material parts of the evidence, but that widely divergent conclusions may be drawn therefrom. On a careful reading of the voluminous record we are most strongly convinced that the case is one in which the findings of the jury are based upon reasonable inferences drawn from the facts proved with such legal sufficiency that the verdict on the facts cannot be disturbed on this appeal.

From the facts established by the evidence it appears that from the time of his employment in 1907 to August, 1922, the plaintiff attended to all the legal business of Miller & Lux which its officers requested him to perform and which included not only the business of Miller & Lux but that of a number of other corporations, some of which were subsidiary to it, and others in which it held varying amounts of stock. It also appears that after his appointment, and until 1913, under his retainer by Miller & Lux and without extra charge, plaintiff performed legal work for Henry Miller and for Miller's personal corporation, the Las Animas and San Joaquin Land Company, Miller and the Las Animas company being the predecessors in interest of defendants as sole stockholders of Miller & Lux Incorporated. In April, 1913, all the stock of Miller & Lux was transferred to the defendants here as trustees under the deed of trust of Henry Miller. From that time plaintiff acted as attorney for the trustees without any extra compensation in the same manner as he had acted for Miller and the Las Animas company, but, until Mr. Miller's death in 1916, appears to have had but little, if anything, to do for them in that capacity. Mr. Miller personally paid plaintiff $500 for drawing his will. When plaintiff became general counsel for Miller & Lux, Miller was its president. Defendant Nickel was then vice-president and general manager and had entire charge of the business. He continued in that position until 1915, at which time he became president and has ever since held that office. He testified that from the time plaintiff became general counsel for Miller & Lux, Mr. Treadwell was his own confidential personal adviser, and without charge rendered legal services for him of a substantial nature. The nature and value of these services appears to be a matter of conflicting opinion. The parties differ very materially as to their nature and extent, but the relation between the plaintiff and Mr. Nickel seems to have been quite close and intimate from 1907 until plaintiff requested payment for his services in connection with the estate and trust of Henry Miller.

The plaintiff testified that some time after his employment by Miller & Lux certain transactions took place which, he asserts, conclusively establish the fact that the parties recognized and construed the contract of employment as not requiring the

plaintiff to perform work of an entirely private nature for the stockholders of Miller & Lux, or that if the contract did originally provide for the doing of such private work for the stockholders, these same transactions show that the parties abandoned and rescinded the contract, and that thereafter the plaintiff was employed by the corporation for corporate work, and by the stockholders themselves for any private work done for them. The primary basis for this contention is his testimony of conversations taking place between Mr. Nickel as an officer of Miller & Lux and himself in 1909 or 1910, in which it was agreed that it was not proper that work of an entirely private nature for the stockholders should be put in plaintiff's hands by the corporation or by its officers acting as such, which understanding was thereafter observed and followed, and from which time the plaintiff attended only to the direct interests of the corporation. The effect of plaintiff's evidence and testimony at this point is vigorously assailed by the appellants, and Mr. Nickel denied that any conversations tending to alter the written contract ever took place.

When Henry Miller died, plaintiff at once conferred with Mr. Nickel about the business that would arise in connection with the estate. There is not, and cannot be, any dispute about the fact that the whole matter of attending to the legal business relating to the estate and trust of Henry Miller was confided to plaintiff and placed in his hands by Mr. and Mrs. Nickel. Mr. Nickel testified that while he made no formal request of plaintiff that the latter attend to the probate of Miller's will, he deemed it proper that Mr. Treadwell should attend to the matter, as he had been attending to all the business of various interests, including the Las Animas company and all other corporations in which the estate was interested; that in his view the business connected with the estate was merely a continuation; that the interests were identical, and that after the stock in the corporations had been transferred to the trustees the business continued along in exactly the same manner as before. The plaintiff testified that he interviewed Mrs. Nickel to get certain data concerning the affairs of the estate, and sought to impress upon her "that she had a very grave responsibility. She brushed it aside and said, 'No, I am going to leave it all to Mr. Nickel.'" Nothing was said at this time by anyone

about the compensation of plaintiff for the services to be rendered, nor was there any discussion of the fact that the services to the estate and trust were to be regarded as outside the contract of plaintiff's employment with Miller & Lux. The contention of the respondent in this connection is that it was not necessary to discuss those matters as the contract of 1907 had been abandoned and no longer included such extraordinary services. Appellants argue that the reason why the matter of compensation, or the contract of original employment, was not discussed was because both plaintiff and Mr. Nickel considered such services included in the contract of 1907.

The plaintiff relies upon what he terms a number of significant facts established in the record, and the inferences to be drawn therefrom, which, he argues, tend strongly to corroborate his testimony and to support the finding of the jury that the extraordinary services rendered by him had no connection with the business of Miller & Lux, or its stockholders, but were rendered in pursuance of a separate and independent contract made between the plaintiff and the defendants, and which finding is reflected in the verdict. Whatever may have been the relation of the plaintiff to Henry Miller, while living, or to his personal affairs, such previous relations were severed by Miller's death. Upon that event the defendants entered upon a new relation to the property of the trust and of the estate of the decedent, for they succeeded to such property, both in the trust and in the estate. The states of California and Nevada and the United States were asserting liens against this property for taxes, which liens sprang into life upon Miller's death, when they for the first time became claims or specific liens, not upon any property of Miller & Lux Incorporated, but upon the property of the trust and estate to which the defendants had succeeded. Defendants were the two persons in existence who were most interested in disputing these tax claims. It would seem only natural and proper, as was suggested in the oral argument in this case, that the plaintiff, who had been adviser of Mr. Miller in legal matters for many years, and fully understood the nature and extent of his property, and who, of all persons, was probably best informed as to the nature of the trust created by Miller and the testamentary disposition which he had made of the

property, should be employed by defendants to defend and protect their interests. Miller & Lux Incorporated was in no way directly interested in the tax litigation. The corporation was an entirely separate entity from the defendants, who were the trustees and beneficiaries of the trust and estate. There is a very substantial basis for the contention of the respondent that it was in the capacity of trustees and beneficiaries of Henry Miller, and in that capacity alone, that the defendants employed plaintiff to render the services which are here in dispute; and that in that capacity they contemplated that they would pay plaintiff for such services. There is the testimony of Mr. Nickel to the effect that he did not consider that the salary received by the plaintiff from Miller & Lux was full compensation for the services rendered in connection with the estate and trust. He testified that an increase in the monthly salary was allowed Mr. Treadwell in 1918 as a proper increase to cover all of the services he [Treadwell] was doing for Miller & Lux Incorporated and the subsidiary interests at that time. When asked if he included in this increase the services of plaintiff in connection with the inheritance tax matters, Nickel answered: "I don't—I didn't include the inheritance tax because it was not under the agreement except he was working under the direction that he was to do anything that he was directed to do by the officers of Miller & Lux." When the matters relating to the estate and trust were finally settled, and the plaintiff requested the defendants to consider and fix his compensation, Mr. Nickel offered to pay him $50,000 for his services. It was the practice of Miller & Lux Incorporated, when plaintiff as its general counsel rendered services for any of its subsidiary interests, to make a charge against such subsidiary interest for a proper portion of plaintiff's salary. In the same way, when the corporation was conducting litigation respecting its water rights, in which other persons were interested, a like charge was made against such persons and collected from them by the corporation. That practice was not observed or followed in connection with the services rendered by plaintiff for the defendants in relation to the estate and trust, although all other expenses of the trustees were charged against them. When the plaintiff, in February, 1921, tendered his resignation as general counsel for

Miller & Lux, he notified the defendants that, so far as the estate and trust of Henry Miller were concerned, he deemed his employment to require him to see those matters completed until the estate was entirely administered, and he would do so if the trustees desired it. The defendant Nickel replied that it was entirely agreeable that plaintiff should complete the Miller estate matters, and asked him to indicate his idea as to the basis for his charges for such services as he might render in connection with the litigation in inheritance tax matters.

In all of the proceedings relating to inheritance and estate tax matters the defendants consistently claimed credit for attorney's fees allowable in the matter of the estate of Miller, the amount of such fees to be deducted from the value of the estate before the taxes were computed thereon. In the proceedings in connection with the demand of the state of California the defendants claimed and were allowed a credit in the sum of $161,195 for attorney's fees. They also presented a verified claim before the internal revenue commissioner for an abatement and deduction of attorney's fees before the federal tax should be assessed, computed on the compensation allowed executors and administrators and their attorneys by sections 1618 and 1619 of the Code of Civil Procedure. The federal tax matter was heard before the master in chancery, and a claim was made by the defendants for an allowance of an attorney fee in the sum of $300,000. The respondent points to the magnitude and value of the services rendered by him in connection with the estate and trust of Henry Miller, in support of an argument that to pretend he was to render such services in addition to all the services he was called upon to render to Miller & Lux for an annual salary, which only approached $20,000 during the last years of his connection with the corporation, is to invoke an absurdity. There is much merit in the suggestion.

Appellants' position is that the plaintiff was employed in October, 1916, to render the services in suit in exactly the same manner as he was customarily requested to attend to business admittedly covered by his salary paid by Miller & Lux Incorporated. They contend that the facts conclusively show that the services were rendered by plaintiff as general counsel of Miller & Lux under his contract of

1907. In consonance with that contention and their claim that the plaintiff, in order to avoid that contract, is here seeking to recover under the terms of an altered contract of employment by Miller & Lux Incorporated, appellants argue that there is no evidence that the written contract was altered by an executed oral agreement, or that it was totally or partially abandoned to the extent of excluding the extraordinary services rendered by the plaintiff. On the other hand, the respondent asserts that he has at no time relied upon a modification or alteration of the contract, but upon the fact that the transactions which he claims took place after its execution either conclusively established that the parties recognized and construed the contract as not requiring him to perform work of an entirely private nature for the stockholders of Miller & Lux, or, that if the contract did originally provide for the doing of such work, these same transactions show that the parties abandoned and rescinded the contract, and that thereafter the plaintiff was employed by Miller & Lux Incorporated for corporate work alone, and by the stockholders for any private work done by plaintiff for them.

[2] A contract in writing may be altered by an executed oral agreement. (Civ. Code, sec. 1698.) If there was a subsequent oral agreement modifying the contract between the respondent and Miller & Lux, its object was to exclude from the terms of the employment the requirement, and to set at rest any contention that by virtue of its provisions respondent should also serve the stockholders in addition to attending to the legal business of the corporation. If thereafter the relations of plaintiff and Miller & Lux were governed by such oral agreement, and its object was fully accomplished, the agreement became executed and worked a modification of the original contract of employment. (Civ. Code, sec. 1661.) In such event plaintiff was in position, unhampered by any arrangement with Miller & Lux, to enter into an independent contract with the defendants for the performance of such services as they, individually, might require of him in connection with the trust and estate of Henry Miller, and for an agreed or an implied compensation. [3] Again, a contract is extinguished by its rescission, which may be had by consent of the parties (Civ. Code, secs. 1688, 1689), and a parol agreement to rescind a con-

tract even under seal is good if such parol agreement is executed. (*Green* v. *Wells & Co.*, 2 Cal. 584:) Consequently, whether the contract of employment between plaintiff and Miller & Lux was altered or modified to exclude from the purview of its terms such services as the plaintiff rendered in this case, leaving him free to contract with stockholders of the corporation as he chose, or whether it was rescinded by mutual consent and abandoned and a new arrangement entered into, and thereafter performed by plaintiff and the corporation, as contended for by the plaintiff, he would be free to make a separate and entirely independent contract with these defendants. If the parties were free to, and did, make such an independent contract, and plaintiff has rendered the services he agreed to perform thereunder, upon an express or upon an implied promise of the defendants to pay him therefor, he is entitled to recover in this action. The trial court in its charge to the jury clearly and comprehensively instructed it on the law, both as to alteration and as to abandonment and rescission of contracts.

[4] A parol agreement to abandon or rescind a written contract may be inferred from the acts of the parties. (*Green* v. *Wells & Co.*, *supra*.) Whether or not the whole conduct of the respondent in attending to the affairs of Miller & Lux, and in conducting their litigation, and what he did in his relations with certain stockholders of the company tended to contradict or to support the evidence of plaintiff that there was an abandonment and rescission of his contract of employment by Miller & Lux was an issue of fact for the jury to decide. All of the circumstances under which the employment of respondent by the appellants was arranged were placed before the jury *in extenso*. It had before it all the antecedent relations of plaintiff and Miller & Lux and these defendants, and what was done by them after the alleged abandonment of the contract. Whether or not, in view of the situation of the parties and their relation to the entire transaction, it was likely or probable that they contracted in the manner claimed by respondent was the peculiar province of the jury to determine. We are not disposed to attempt a further narration of the evidence, or to engage in a discussion as to its weight or significance. The transcript discloses that "the case was regularly argued

by respective counsel to the jury," and from our knowledge of the eminent counsel engaged in this trial we may well assume that the jurors were thoroughly enlightened as to the views of both sides with reference to the weight and character of the evidence and the consideration to be given to their opposing contentions. By proper instructions the court fully charged the jury as to its duty in weighing and considering the evidence. We apprehend that no good will be accomplished in setting forth any more of the evidence relied on by appellants to overthrow the case of the respondent. [5] When a verdict is attacked for insufficiency of evidence, our power begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the jury. If, on any material point, the testimony is in conflict, it must be assumed that the jury resolved the conflict in favor of the prevailing party. (*Gjurich* v. *Fieg,* 164 Cal. 429, 431 [Ann. Cas. 1916B, 111, 129 Pac. 464].) Therefore, we have simply epitomized enough of the record to show that the verdict has substantial support if the jurors received the evidence of plaintiff as true and accepted and adopted the construction he placed upon it. [6] Appellants contend that an oral alteration or abandonment of plaintiff's written contract with Miller & Lux Incorporated was not proved as the law requires (citing *Ross* v. *Tabor,* 53 Cal. App. 605, 615 [200 Pac. 971]), by clear, positive, and convincing evidence. The court instructed the jury that evidence of the rescission or abandonment of the written contract in this case must be clear, positive, and above suspicion. That instruction was most favorable to the appellants, for the statutory rule in civil actions is that the case must be decided according to the preponderance of the evidence (Code Civ. Proc., sec. 2061, subd. 5), and all judicial expressions concerning the necessity of clear and satisfactory proof of an executed oral agreement in a case such as this must be construed in the light of the fundamental declaration that a preponderance of the evidence controls in a civil case. (*Edmonds* v. *Wilcox,* 178 Cal. 222, 224 [172 Pac. 1101].) [7] The sufficiency of the evidence to establish a given fact, even where the law requires proof of the facts to be clear and convincing, is primarily a question for the trial court and

the jury, and if there be substantial evidence to support
the conclusion reached below, the finding is not open to
review on appeal. (*Steinberger* v. *Young,* 175 Cal. 81, 84
[165 Pac. 432].) We are not called upon to say that the
evidence in the record is entirely plain and convincing. To
the extent that its determination rests upon a mere prepon-
derance of evidence, or upon the consideration of conflicting
or contradictory evidence, the finding in the lower court is
not subject to review in this court. (*Wadleigh* v. *Phelps,*
149 Cal. 627, 638 [87 Pac. 93]; *De Kahn* v. *Chase,* 177 Cal.
281, 283 [170 Pac. 608].)

It is the contention of the appellants that the trial court
committed prejudicial errors in its instructions to the jury
concerning the contract of 1907, and concerning the extent
and value of plaintiff's services. Primarily, appellants'
claim is that the court erred in denying their motion for a
directed verdict; in refusing two peremptory instructions
requested by them directing the jury to find in their favor;
and in giving a number of instructions submitting to the
jury the question whether or not the contract of 1907 be-
tween plaintiff and Miller & Lux Incorporated had been
changed or rescinded. In support of this claim appellants
rely upon the argument made and the authorities cited to
uphold their contention that the evidence does not sustain
the verdict. What we have already said, therefore, disposes
of these primary objections to the instructions.

[8] Appellants take exception to an instruction (XL)
by which the court told the jury that whether or not there
was an express agreement by the defendants to pay plaintiff
the reasonable value of his services was a question of fact
to be determined by it "from all the evidence in the case."
The instruction was properly given. There was evidence
which would support an inference that the defendants ex-
pressly agreed to pay plaintiff. [9] An express contract
is one the terms of which are stated in words (Civ. Code,
sec. 1620), but such a contract need not be in writing.
[10] When the contract relied on is oral, its interpretation
in the first instance is a question of fact to be determined
by the jury. (*Smyth* v. *Tennison,* 24 Cal. App. 519, 521
[141 Pac. 1059].) The question, therefore, was one of evi-
dence, and it was for the jury to determine from the facts
and circumstances proved, including, of course, the con-

versations between the parties, whether or not a contract was proven. (*Nevills* v. *Moore Min. Co.*, 135 Cal. 561, 564 [67 Pac. 1054].)

[11] In one of the instructions (XLa), the jury was told that in determining whether there was any other or different contract than that of 1907 it might consider all the circumstances "including the relative amount of work before and after that contract and before and after the death of Henry Miller, and all acts and declarations of the parties during the performance of said services." In another instruction, concerning the allegation in the answer that the defendants believed that the services in controversy were included by the terms of the contract of 1907, the court instructed the jury that in the determination of that allegation it might consider all of the evidence in the case, "including all of the communications either oral or in writing passing between the parties and all of the acts of the defendants with relation to the fees of said attorney in connection with the estate and trust of Henry Miller." It is contended by the appellants that these instructions are objectionable as singling out and bringing into prominence certain isolated facts and thereby, in effect, intimating to the jury that special consideration should be given to those facts. No reason appears why the court should have singled out portions of the evidence and specially directed that it might be considered. Under the general instructions contained in the full and comprehensive charge, the jury must have known that such evidence with all other evidence of facts and circumstances in the case was to be considered by them. Instructions which are framed solely for the purpose of and which simply have the effect of emphasizing some particular portion of the evidence are not to be commended, and are properly refused. (*Still* v. *San Francisco Ry. Co.*, 154 Cal. 559, 572 [129 Am. St. Rep. 177, 20 L. R. A. (N. S.) 322, 98 Pac. 672].) Such an instruction was denounced as objectionable in *Estate of Martin*, 170 Cal. 657, 672 [151 Pac. 138], but it does not appear that the reversal in that case was had because of the improper instruction.

[12] By another instruction the court told the jury that the issues of fact for its determination were presented by the denials made in the answer to the allegations of the complaint and by the affirmative matter pleaded by the

defendants. Appellants complain that by this instruction plaintiff's amended bill of particulars was entirely withdrawn from the jury's consideration in determining the issues of fact. [13] There is no merit in the contention. The bill of particulars furnished to the defendants was, of course, to be regarded as an amplification of the complaint, and for the purpose of determining plaintiff's right to recovery, or the admissibility of evidence that might be offered in support of his claim was to be considered as if it had been incorporated in the complaint as originally filed. (*Millet* v. *Bradbury*, 109 Cal. 170, 172 [41 Pac. 865].) In an instruction proposed by the appellants, explaining at length the issues of the case, and next following the one now criticised by them, the trial court properly told the jury that an amended bill of particulars which plaintiff furnished the defendants, segregated the various services performed, and placed a value upon each of them "aggregating for all the sum of $641,276.13, which amount in his complaint he reduced to the sum of $300,000." If the defendants desired any further or more explicit instruction with reference to the bill of particulars they should have asked that such be given. Not having done so, they cannot be heard to complain that it was not given. (*Rice* v. *Whitmore*, 74 Cal. 619, 624 [5 Am. St. Rep. 479, 16 Pac. 501].)

[14] Plaintiff called a number of experts to testify to the value of his services. It is contended by appellants that the trial court erred in refusing to give an instruction requested by them to the effect that the jury should disregard the testimony of an expert witness unless it believed that *all* the material facts, upon which the hypothetical question propounded to the experts was based, were true. The instruction was properly refused. [15] Expert testimony is to be given the weight to which it appears in each case to be justly entitled. The law makes no distinction between that kind of testimony and evidence of other character. (*Rolland* v. *Porterfield*, 183 Cal. 466, 469 [191 Pac. 913].) The witness to whom the hypothetical question is addressed assumes the facts stated to be true, and bases his answer upon the assumed case. The opinion of the witness must, therefore, be brought to the test of the facts in order that the jury may judge what weight his opinion is entitled to. (*Estate of Dolbeer*, 149 Cal. 227, 252 [9 Ann. Cas. 795, 86 Pac. 695].)

When the evidence is sufficient as a basis for a hypothetical question, the truth or falsity of the purported facts is a question for the jury to determine. (*Coonan* v. *Loewenthal,* 129 Cal. 197, 203 [61 Pac. 940].) The opinion can have little, if any, value unless the material facts assumed in such question are substantially true, and the court may properly so instruct the jury whenever there is conflicting evidence as to the truth of the assumed facts. [16] Such opinion evidence does not, however, necessarily become wholly valueless because there is some variance between the facts assumed in the question and the actual facts proven. What weight should be given in such cases to the opinion of the expert witnesses is a question for the jury under proper instructions from the court. (*Anderson* v. *Husted,* 79 Conn. 535, 538 [66 Atl. 7]; *Madden* v. *Saylor Coal Co.,* 133 Iowa, 699, 704 [111 N. W. 57].) An expression in *Hallawell* v. *Union Oil Co.,* 36 Cal. App. 672, 685 [173 Pac. 177, 183], that "counsel objecting [to a hypothetical question] may have the instruction of the court to the jury to disregard the testimony of the expert unless satisfied that all of the facts upon which the question is based are true," is mere *dictum,* and does not correctly state the law relating to expert testimony, and is at variance with a later statement by the same court of the correct rule. (*Graves* v. *Union Oil Co.,* 36 Cal. App. 766, 770, 771 [173 Pac. 618].)

The appraised value of Henry Miller's estate which was actually probated was $36,878.44. The statutory attorney's fees for the usual conduct of the administration of such an estate amount to $1,067.16. (Code Civ. Proc., sec. 1618.) In his amended bill of particulars plaintiff claimed $208,-776.13 for "ordinary services in the matter of the estate and trust of Henry Miller, appraised at the sum of $41,489,226.64, computed according to section 1618 of the Code of Civil Procedure." Appellants requested the trial court to instruct the jury that plaintiff could not recover fees for ordinary services to the Miller trust, as distinguished from the estate, and if entitled to recover at all could be allowed only the sum of $1,067.16, and that there was "no evidence that the plaintiff performed any service for the trust for which the law would allow compensation computed according to section 1618 of the Code of Civil Procedure." The instruction was clearly misleading and the trial court properly refused

to give it. It will be remembered that by his last will and testament Henry Miller left the residue of his estate, with the exception of certain real property, to these defendants to be held upon the same trusts as provided in the deed of trust. No one contesting either the will or the deed of trust, the residue of the small "estate" was distributed as directed, but the title to the vast bulk of Miller's property passed to the defendants under the deed of trust, and the "estate" was in fact administered as the "trust," the property value of which was $41,489,226.64, the sum mentioned by plaintiff in his amended bill of particulars. [17] Compensation of trustees is confided to the discretion of the trial courts (Code Civ. Proc., sec. 1700), and an attorney for such trustees is entitled to the reasonable value of his legal services as a proper expense out of the trust fund. (*Estate of O'Connor*, 2 Cal. App. 470, 478 [84 Pac. 317].) It is a matter of common knowledge that, since the legislature, by statute, fixed the compensation of executors and administrators, and provided that their attorneys shall be allowed as fees for conducting the ordinary proceedings of estates the same amounts as are allowed as compensation for executors and administrators (Code Civ. Proc., sec. 1619), in the administration of ordinary trust affairs the same ratio of compensation for trustees and their attorneys will frequently be fixed. Under certain circumstances, a trustee is entitled to the same compensation as an executor. (Civ. Code, sec. 2274.) There was nothing unusual, therefore, in the plaintiff here seeking compensation for his ordinary services rendered to the "estate" and "trust" of Henry Miller—they were in effect the same in so far as his services were concerned—on the basis of the fees regarded by the legislature as reasonable in ordinary probate matters. Whether or not the jury would regard such basis of compensation or any basis of remuneration of the attorney as reasonable, provided it found the "ordinary services" were rendered as claimed, was one of the issues of the case which would have been withdrawn from its consideration by the proposed instruction.

The plaintiff called a number of attorneys, who were qualified as experts, to testify to the value of his services. The opinions of these witnesses were expressed in answers to a hypothetical question containing the plaintiff's own

statement of what he did in connection with the estate and trust of Henry Miller. All objections interposed to the question by the defendants were overruled, and it is contended that the trial court erred in its ruling. Other than to say in their brief that "the hypothetical question was . . . highly objectionable on the grounds stated in the written objection," appellants argue only the ground of objection that the question assumed facts not in evidence. They say: "The question, for example, in several places dogmatically stated that plaintiff's services had in various instances resulted in savings to defendants running into the hundreds of thousands of dollars, while in many of these instances there was no evidence to show that there had been any saving at all." We do not feel called upon to analyze a long hypothetical question, contained in some eighty-three pages of typewritten transcript, and an objection involved in fourteen pages more of the record, in a critical search for objections not pointed out and argued here. Only four specifications are now presented of the particulars in which it is contended the question assumed facts for which there was no support in the evidence. The first has to do with an item contained in a *résumé* by plaintiff of the final amount claimed to have been conserved to the Miller Estate by the tax litigation conducted by him, from which it would appear that $2,000,000 was saved by the judgment of the Nevada court limiting the Nevada tax to the value of the property in that state. As the basis of this assumed fact the hypothetical question sets forth the history of the Nevada litigation in the light of the circumstance that the Nevada court held that the trust deed from Henry Miller to the defendants, which was dated April 17, 1913, was in its nature testamentary and did not take effect until his death, and that under a construction which plaintiff asserted might be placed upon the Nevada tax statute, passed March 26, 1913, it would have been possible to fix the tax on the value of the corporate stock of Miller & Lux Incorporated in California. "If this tax," reads the question, "had been based upon the total value of the stock, as fixed in California, the tax would have amounted to about $2,000,000." The history of this litigation and a narration of all that the plaintiff did in the matter was embodied in the question in support of the claim of the plaintiff that his efforts were the

means of saving tha'; sum for the estate. Facts shown by the defendants, and otherwise appearing in the evidence, the appellants argue, tend to practically break down the entire claim of the plaintiff as to this item of his services. Miller & Lux Incorporated, while a Nevada corporation, possessed nothing in that state other than ownership of the capital stock of the Pacific Live Stock Company, a company incorporated in this state, and which held title to all Miller's property in Nevada. To offset the effect of plaintiff's evidence, that the sum of $2,000,000 was saved to the estate, the defendants introduced testimony which tended to show that the state of Nevada did not claim the right to tax the corporate stock of Miller & Lux Incorporated, but demanded only a tax on the value of the stock of the Pacific Live Stock Company, which value was stipulated in the litigation, the tax thereon amounting to some $48,000.

[18] The question does assume facts at variance with the evidence introduced by the defendants, and, of course, in disagreement with the construction placed upon plaintiff's evidence by them. It was skillfully drawn, as hypothetical questions usually are, to meet the views of the party propounding it. Considerable latitude must be allowed in the choice of facts as the basis upon which to frame a hypothetical question. Every hypothesis contained in the question should have some evidence to sustain it. But while this is true, it is also the rule that it is not necessary, in framing the question, to include a statement of all the evidence in the case. The question may be framed upon any theory of the questioning party which can be deduced from the evidence, and the statement may assume any facts, within the limits of the evidence, upon which the opinion of the expert is desired. It may omit any facts not deemed by the questioner material to the inquiry. (10 Cal. Jur., p. 966, sec. 223.) It is the privilege of a party in such cases to assume, within the limits of the evidence, any statement of the facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed, subject to the limitation that the question shall not be unfair or misleading. (Thompson on Trials, secs. 606–610; *People v. Hill,* 116 Cal. 562, 567 [48 Pac. 711].) Measured by these considerations, the question here was not objectionable.

The second objection urged to the hypothetical question is

that it assumes the plaintiff in one instance secured a re-
duction of taxes amounting to some $83,000, when the evi-
dence discloses that the amount was but $53,000. The
statement was an error, which was corrected in the subsequent
summary of taxes alleged to have been saved to the estate,
and we are satisfied no harm was done by the misstatement.

It is next contended that the hypothetical question did
not make it clear that certain services rendered in connec-
tion with a bond issue of Miller & Lux Incorporated were
performed for the corporation and not for the defendants.
We have no doubt that the learned lawyers to whom the
question was submitted clearly understood that the services
were performed for the corporation. Objection is now made
that the question included facts the evidence of which had
been stricken from the record. Respondent admits such to
be the fact, but contends that no objection on that ground
was made when the question was asked. The objection was
that "there is no  evidence" of the fact, which would be a
sufficient objection, for if the evidence on the fact was
stricken from the record, there certainly would be no evi-
dence on the point. The matter stricken out, however,
related only to what another attorney told plaintiff concern-
ing the attitude of the newspapers and the public toward
the Miller Estate tax litigation, and seems inconsequential
in the light of the real issues involved in the case.

The remaining objection pointed out is merely a con-
troversy as to whether plaintiff or another attorney should
have credit for the line of conduct of a portion of the tax
litigation. No matters have been pointed out to us which
amounted to a substantial error in the ruling of the trial
court on the hypothetical question.

Appellants complain that the trial court gave contradictory
and inconsistent instructions. At the request of the defend-
ants, the court instructed the jury that the contract for legal
services, entered into between plaintiff and Miller & Lux
in 1907, was plain and unambiguous, and that, unless it
had been changed or abandoned, it included the services
in suit and prevented a recovery by plaintiff in this action.
At the plaintiff's request, it instructed the jury that even
though the contract of 1907 was in effect at the time of the
alleged employment of plaintiff by the defendants, such con-
tract would not prevent the defendants from entering into

an independent contract with plaintiff and agreeing to pay him for his services, and that if they did so, and promised to pay him for his services, such promise was valid and the agreement of the plaintiff to perform such services would be a sufficient consideration for their agreement to pay him therefor. A better understanding of the situation will be had by reading the instructions in full. They are (at the request of the defendants): "XVIII. Taking up first in point of time the alleged contracts concerning which evidence has been offered in this case you are instructed that the three letters set out in the answer of the defendants written in 1907, and which may be referred to as the so-called contract of 1907, constitute a written contract between plaintiff and Miller & Lux Incorporated. That contract is plain and unambiguous and, under it, plaintiff, unless he has proved by a preponderance of the evidence that the contract was modified, changed, or abandoned in this respect, was bound to perform any business or service of any nature for any interests which the officers of Miller & Lux might deem proper to place in his hands, including work for stockholders, and including the services for which he seeks compensation in this case." "XXV. If you find, in accordance with these instructions, that the written contract of 1907 between the plaintiff and Miller & Lux Incorporated was not modified, it makes no difference whether the services in question in this case were anticipated or contemplated by the parties when this contract was made, and it makes no difference whether the plaintiff's services were reasonably worth more than the price fixed in this contract. If this contract was not altered, modified or abandoned it controls this case and the plaintiff is not entitled to recover anything." (At the request of the plaintiff:) "XXXV. Even if the contract of 1907 was still in effect at the time of the alleged employment by [of] plaintiff, such contract would not prevent the defendants from entering into an independent contract with plaintiff and employing plaintiff and agreeing to pay him for his services, and if he agreed to perform said services this would be sufficient consideration for their agreement to pay him therefor." "XLI. One of the principal issues in this case is whether or not the plaintiff was employed to perform the services in question by the defendants, or whether the particular

services were performed under the alleged contract with Miller & Lux Incorporated of 1907. Even if under the alleged contract with Miller & Lux Incorporated of 1907 that corporation or its officers might have placed these services in the hands of the plaintiff, still there was no particular term of employment under that contract and the plaintiff, therefore, could have refused to perform such services under that contract. Therefore, the defendants were at liberty to employ the plaintiff to perform such services independent of said contract and if they did so employ him and promised to pay him therefor, such promise was entirely valid and the promise of the plaintiff to perform such services would be a sufficient consideration therefor.''

Appellants contend that these instructions are contradictory and conflicting on a most material issue of the case, and that the action of the trial court in giving them constituted prejudicial error calling for a reversal of the judgment. We do not agree with this contention. The situation is clarified when it is remembered that Miller & Lux Incorporated is not a party to this action. We are not now considering what, if any, mutual obligations or restrictions rested upon plaintiff and Miller & Lux Incorporated by reason of the contract of 1907, at the time it is said plaintiff and these defendants entered into the contract here in question. The defendants were not parties to the contract of 1907. There was nothing in its terms or provisions which erected a bar against, or purported to prohibit them from individually entering into an independent engagement with plaintiff, unaffected by anything in the existing relations between plaintiff and Miller & Lux, and agreeing to pay him for his services. The vital question in the case is, Did they do so? Appellants say they did not, and have attempted to justify their denial by setting up a contract to which they were not parties, but under which they assert plaintiff rendered the services at the instance of, and as chief counsel for Miller & Lux Incorporated. The trial court of its own motion, and again at the instance of plaintiff as just indicated, instructed the jury that a main issue was: Under which of the contracts set forth in the pleadings in the case were the legal services in question performed? By other instructions (XIX to XXIV, inclusive), the court very properly submitted to the jury the question whether or not

the services of plaintiff were covered by the contract of 1907. In these instructions it construed the contract of 1907 to mean that under its terms plaintiff was in any event required to do only such work as the officers of the corporation deemed proper to place in his hands as such officers, acting as such in their official capacity, but that he was not required to perform services which might be placed in his hands by persons who merely happened to be officers of the corporation but who were not acting as such in placing the work in his hands; and also that they should consider whether Mr. Nickel, in placing the legal matters pertaining to the estate and trust of Henry Miller in the hands of plaintiff, was acting as an officer of Miller & Lux Incorporated, or merely in his capacity as an executor and trustee. The burden of the lengthy charge—there were some fifty-two instructions—when read as a whole, as it must be (*Peters* v. *Southern Pac. Co.*, 160 Cal. 48, 69 [116 Pac. 400]), was that if the jury found that the services for which plaintiff is here seeking compensation were rendered by him under the contract of 1907, he could not recover without first showing a modification or abandonment of that agreement; but that, if the services were in fact rendered under and in pursuance of a separate and distinct contract for their performance, entered into by the defendants individually with the plaintiff, independent of and aside from the contract between Miller & Lux Incorporated, and having no relation thereto, plaintiff could recover, for in such event the contract of 1907 would constitute no bar to the separate and independent agreement between the plaintiff and defendants. Thus considered, the charge is a correct statement of the law of the case, and the apparent inconsistency and contradiction arise only by reason of the giving by the trial court of the defendants' instructions that unless the contract of 1907 was altered, modified, or abandoned, it controlled the case and prevented a recovery by plaintiff. [19] The giving of conflicting instructions upon a material point is undoubtedly error, but a party may not be heard to complain that instructions are inconsistent, if it appear that the inconsistency arises through the giving of instructions at his request which are inconsistent with, or contradictory of other instructions given at the request of the other party which are pertinent to the issues of the case, and which are correct

statements of the law. (*Barkhaus* v. *Producers Fruit Co.,* 192 Cal. 200 [219 Pac. 435].) Instruction XXV (*supra*) was prejudicial to the cause of the plaintiff and favorable to appellants', for it took away from the jury the issue of fact, raised by the answer, whether the employment of plaintiff was by Miller & Lux Incorporated, or by the defendants, and narrowed the case to one of modification or abandonment of the contract. **[20]** A conflict in instructions which does not operate injuriously to an appellant is not ground of reversal. (*Dennison* v. *Chapman,* 105 Cal. 447, 458 [39 Pac. 61].) Complaint is also made that there is no evidence in the record to warrant the instruction (in XLI, *supra*) that as there was no particular term of employment of plaintiff under the contract of 1907, plaintiff could have refused to perform the services here in question, if required to do so under that agreement. It is true there is no evidence in the record that the plaintiff ever refused to perform the services in question, but appellants concede that "it may be true as an abstract matter that plaintiff could have terminated his contract with Miller & Lux, and that, if he had done so, he might have made an enforceable contract with defendants to pay him for his services." No injury to appellants' cause affirmatively appearing by reason of a correct instruction on an abstract matter of law, the error will be disregarded as unimportant and unsubstantial. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 554 [147 Pac. 238].)

The judgment is affirmed.

Richards, J., Lawlor, J., Lennon, J., Seawell, J., Myers, C. J., and Houser, J., *pro tem.,* concurred.

Rehearing denied.