[Civ. No. 3371. Third Appellate District.—December 1, 1927]

SUSIE W. PERHAM, Appellant, v. FIRST NATIONAL BANK OF LA VERNE (a Corporation), Respondent.

A. L. Hickson and Nichols, Cooper & Hickson for Appellant.

Lucius K. Chase and Alan Nichols for Respondent.

PRESTON (H. L.), J., *pro tem.*—The plaintiff Susie W. Perham brought this action against the defendant First National Bank of La Verne to recover the sum of $7,000, which she claims was deposited by her with said bank to be loaned for her benefit.

The case was tried by the court sitting without a jury, and judgment was entered in favor of the defendant First

National Bank of La Verne. From this judgment plaintiff prosecutes this appeal.

The complaint is in form a simple action for money had and received, and so denominated by the plaintiff and alleges: "That on the 24th day of June, 1922 . . . the defendant received from the plaintiff the sum of $7,000.00, for the use and benefit of said plaintiff . . . and that plaintiff has not received anything of value from defendant, and that the said $7,000.00, or any part thereof, has not been repaid to this plaintiff, except that on the 24th of September, 1923, defendant credited plaintiff's account with said bank with the sum of $135.00, and on the 24th of December, 1922, defendant also credited plaintiff's account with the sum of $135.00, which plaintiff assumes, and alleges, to have been interest accruing on said $7,000.00, but that no other sum, either on account of principal or interest, has been paid to plaintiff by defendant, and that the whole of said $7,000.00, together with interest at the rate of eight per cent per annum on $5,000.00, and seven per cent per annum on $2,000.00, from December 24, 1922, is due, owing and unpaid. . . . "

The answer of defendant denies the material allegations of the complaint and avers the facts to be that on or about the 24th of June, 1922, the plaintiff, Susie W. Perham, delivered to said defendant $7,000 for the purpose of having $5,000 thereof loaned to one R. M. Martin at the rate of eight per cent per annum, and for the further purpose of loaning $2,000 thereof to one H. J. Vaniman, and the answer further alleges that pursuant to said understanding, the $5,000 and $2,000, respectively, were so loaned, and both loans evidenced by promissory notes.

The court, among other things, found "that on or about the 24th day of June, 1922, said plaintiff did deliver to said defendant the sum of $7,000.00 for the purpose of having $5,000.00 thereof loaned to one R. M. Martin at the rate of eight per cent per annum, payable in three months after date, and for the purpose of obtaining from said R. M. Martin a promissory note, to be signed by said R. M. Martin, payable in three months after date at the rate of eight per cent per annum, and for the further purpose of loaning $2,000.00 thereof to one H. J. Vaniman, said last mentioned loan to be evidenced by a note in the sum

of $2,000.00, payable in six months after date to Susie W. Perham, bearing interest at the rate of seven per cent per annum, and to be signed by said H. J. Vaniman; that pursuant to said understanding, said sum of $5,000.00 was loaned on the 24th day of June, 1922, to said R. M. Martin, and his note in the sum of $5,000.00 dated June 24, 1922, payable three months after date with interest at the rate of eight per cent per annum, executed by said R. M. Martin, was delivered by said R. M. Martin to said defendant for said Susie W. Perham, and that said $2,000.00 was loaned to H. J. Vaniman, and said loan was evidenced by a note dated June 24, 1922, in the sum of $2,000.00, payable six months after date to Susie W. Perham, bearing interest at the rate of seven per cent per annum, and duly executed by H. J. Vaniman, which said note was delivered by said H. J. Vaniman to said defendant for Susie W. Perham; that thereafter said Susie W. Perham was advised thereof by said defendant, and said defendant was instructed by her, through her husband and agent, W. C. Perham, to retain possession of both of said notes for her, which said defendant has ever since done. . . . The Court further finds that no part of said sum of $7,000.00 has been repaid by said defendant to said plaintiff, excepting that on or about the 24th day of September, 1922, said defendant credited the said plaintiff's account with said bank with the sum of $135.00, and on the 24th day of December, 1922, the defendant also credited plaintiff's account with said bank with the sum of $135.00, interest accruing on said dates, and that no other sum, either on account of principal or interest, has been received by said plaintiff from said defendant, *but further finds that said defendant having loaned said money as aforesaid for said plaintiff, that said defendant is under no obligations to pay to said plaintiff the sum of $7,000.00 or any part thereof,* and further finds that no part of said sum of $7,000.00, and no part of any interest thereon at the rate of 8% per annum, or otherwise on $5,000.00 thereof, or seven per cent on $2,000.00 thereof from December 24, 1922, or any portion thereof, is now wholly or in part due or unpaid from said defendant to said plaintiff. . . . ''

Appellant strenuously contends that these findings are not supported by the evidence. On the contrary, respond-

ent insists that the evidence is ample to support all the findings made by the trial court.

The evidence upon the material issues of the case is decidedly conflicting. The law is, of course, well established that the findings of the trial court upon conflicting evidence are conclusive on appeal and all reasonable inferences are to be indulged in support of the findings, and the burden is upon appellant, who claims error, to show its existence. (*Wilbur* v. *Wilbur*, 197 Cal. 7. [239 Pac. 332]; *Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25]; Hayne on New Trial and Appeal, rev. ed., p. 1574; *Gjurich* v. *Fieg*, 164 Cal. 429 [Ann. Cas. 1916B, 111, 129 Pac. 464].)

In *Treadwell* v. *Nickel, supra,* the court said: "When a verdict is attacked for insufficiency of evidence, our power begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the jury. If, on any material point, the testimony is in conflict, it must be assumed that the jury resolved the conflict in favor of the prevailing party."

Again, in *Wilbur* v. *Wilbur, supra,* the court said: "When two or more inferences may reasonably be deduced from a certain set of facts or circumstances, a reviewing court is not permitted to substitute its deductions for those of the trial court."

We will, therefore, refer briefly to that portion of the evidence in the case which supports the findings of the trial court.

Plaintiff and her husband, Willis C. Perham, had been since 1910, and were at the time of the transaction in controversy, customers of the defendant bank, and had transacted their business for several years with H. J. Vaniman, who was its vice-president and cashier. On or about the 22d of June, 1922, said Willis C. Perham sold his ranch for some $18,000, and deposited the proceeds thereof with the defendant bank in the joint names of W. C. Perham and Susie W. Perham. On the day the money from the sale of the ranch was deposited in defendant bank W. C. Perham asked Vaniman if he could loan $7,000 for him and Vaniman replied in substance: "I have a friend in Los Angeles by the name of R. M. Martin who could use $5,000.00, and if you figure that my name is good for $2,000.00, I could

use $2,000.00. Mr. Martin has agreed to pay eight per cent, but for myself I do not wish to pay over seven per cent. Mr. Martin has given me a deed to an orange grove containing 26 acres as security for a loan of something like $8,000.00 which I have already made him, and I will include your $5,000.00 in the same security." W. C. Perham replied that he would let Vaniman know within a couple of days about the loans. Thereafter, and on June 24, 1922, Mr. Perham, together with his wife, the appellant herein, again called at the bank and had a further conversation with Vaniman regarding the proposed loans which resulted in authorizing Vaniman to make the loan of $5,000 to R. M. Martin and loaning $2,000 to Vaniman. W. C. Perham gave Vaniman his personal check on defendant bank for $7,000, and stated to him that on account of his ill health the notes should be made to his wife, Susie W. Perham. Thereupon, Vaniman made and delivered to Mrs. Perham a receipt reading as follows: "Received from Susie W. Perham, seven thousand dollars ($7,000.00), $5,000.00 at 8%, $2,000 at 7%, same loaned for her benefit. (Signed by rubber stamp.) First National Bank, La Verne, California. H. J. Vaniman." Vaniman then made his note to Mrs. Susie W. Perham for $2,000.00 and told Mr. and Mrs. Perham he would send the other note to Los Angeles for Martin's signature.

Vaniman further testified that Mr. Perham told Vaniman, after the Martin note had been received, to keep the notes in the bank and that he would call for the interest when it became due.

The notes remained in the possession of the bank until the time of the trial. Thereafter, two interest payments were credited by Vaniman on each note, and $135, purporting to be the interest, was deposited to the account of Mr. and Mrs. Perham in defendant bank.

After this transaction Vaniman continued to act as cashier and vice-president of the defendant bank until March, 1923, when it was discovered that he had been for some time speculating in oil and losing heavily, and had misappropriated the funds of the bank. Shortly after his discharge as cashier and vice-president, and in April, 1923, Vaniman made an assignment to the president of defendant bank of all his property, including the security that he claimed

he had taken for the Martin note, and in the following July was declared a bankrupt.

W. C. Perham died on the 23d of June, 1923. Mrs. Perham made demand on the bank for the money on July 13, 1923, and this action was commenced on August 3, 1923, and tried in July, 1924.

Prior to the death of Mr. Perham no claim or demand was made against the defendant bank for the $7,000 or any part thereof, and Mr. Yundt, the president of the defendant bank, testified that about a year after the loan was made Mr. and Mrs. Perham called upon him and inquired of him relative to Vaniman's resources, stating that they held certain notes, having made a loan to R. M. Martin and H. J. Vaniman. There is also some testimony in the record to the effect that Mr. Perham had, shortly before his death, attended a meeting of Vaniman's creditors and had listed his $2,000 note among the liabilities of Vaniman.

It is evident, from the findings of the trial court, that it accepted the testimony of Vaniman as a true statement of the transaction in question.

The appellant Susie W. Perham in her testimony flatly contradicts the foregoing testimony of Vaniman on almost every material point. She testified that she and her husband told Mr. Vaniman that they had decided to let the *bank* handle their money and loan $7,000 for them, and Vaniman replied that the bank was glad to handle their money and that "we were wise to bring it to the bank instead of investing it in some wildcat scheme, where we would be liable to lose it," and, adding, "that it makes business good for citizens to bring money to the bank." She also testified as follows: "Q. Did Mr. Vaniman say anything relative to what would be done with the $7,000.00? A. He said, when we spoke about the seven thousand, he said, 'I know right now where we can place $5,000 of that to good advantage.' Q. Did he say where it was to be placed? A. He said it would be on a grove. Q. Did he mention the name of the man? A. I think not that I heard. Q. Did he say at that time where he was going to put the $2,000? A. Well, he said, 'We will find some good place to put that where it will be good security.' Q. Did you ever see any notes for which this money was loaned? A. No, sir. I never heard of it. Q. Did Mr. Vaniman or anyone else ever

tell you about any notes? A. No, sir. Q. Did ₁ he ever deliver any notes to you or offer to deliver any? A. No, never mentioned. Q. Did you ever see Mr. Vaniman after this loan was made? A. Yes. Q. Did you ever talk to him about this loan or these loans? A. No. Q. When was the first time that you ever heard that $5,000 was loaned to R. M. Martin of Los Angeles and $2,000 to H. J. Vaniman, cashier? A. Not till after Mr. Perham was gone. The Court: State that again. A. Not till after Mr. Perham was gone and suit had been instituted against the bank. Q. By whom? A. By myself. Q. The first information you had was what was made in the answer of this bank? A. Yes, sir.''

A great many other facts and circumstances were adduced at the trial, but the above is sufficient to show the conflicting character of the testimony on the vital points. From all the facts and circumstances in the case the trial court might well have decided in favor of the plaintiff, and there would have been ample evidence to support such conclusion.

■ Appellant contends that the acts of the bank were fraudulent *per se,* in that the bank, by its cashier, loaned appellant's money to its cashier, who then had outstanding more than $23,000 of unsecured notes and was on the verge of bankruptcy. The difficulty with this contention is that the court found, upon conflicting evidence, *that Perham himself authorized the loan to Vaniman, and not the bank.*

Appellant also contends that the acts of the bank were fraudulent *per se* in making the loan of $5,000 to Martin, when Martin already owed Vaniman and the bank $8,000 on insufficient security. This contention is also answered by the fact that the court found that the bank did not authorize the loan to Martin, but that *Perham himself authorized that the loan be made to R. M. Martin.*

It is also contended by appellant that the bank was negligent in making the loans, in that the money was loaned to persons not financially responsible and without security. This contention is also answered by the finding that the money was loaned according to the directions of the husband of plaintiff, and also that such a cause of action is not raised by the pleadings.

We deem it unnecessary to discuss further any of the other contentions made, for the reason that the case in its

last analysis is simply a case where the evidence is conflicting, and the court having resolved the conflicts in favor of the defendant, such findings are conclusive on appeal, and the questions of law raised by appellant, however correct in the abstract, can avail her nothing in the face of such findings. Under such a situation we are not authorized to disturb the judgment.

The judgment is, therefore, affirmed.

Plummer, J., and Finch, P. J., concurred.