[Sac. No. 3383. In Bank.—October 10, 1923.]

## F. W. BARKHAUS, Respondent, v. PRODUCERS FRUIT COMPANY (a Corporation), Appellant.

[1] LANDLORD AND TENANT—SUBLEASE—TRANSFER OF TERM—ASSIGN-MENT.—A sublease, in order to operate as an assignment, must transfer to the sublessee the entire term of the original lessee in the whole or some part of the demised premises; and the assignment of the term, in order to terminate the privity of estate between the assignor and the original lessor, must transfer his term in the entire premises; and the term thus referred to is not measured alone by the length of time for which it runs, but is measured as well by the extent of the premises which it covers and the nature and extent of the estate or interest therein which it embodies.

[2] ID.—TERMINATION OF PRIVITY OF ESTATE—CHARACTER OF TERM ASSIGNED.—The term which a tenant must assign, in order to terminate his privity of estate with the landlord, must be for a period of time at least equal to the remainder of the term of the original lease; it must cover all of the premises demised by the original lease, and it must include all of the estate and interest in said premises possessed by the lessee under the original lease.

[3] ID. — CONSTRUCTION OF LEASING AGREEMENT — RETENTION OF ES-TATE—LIABILITY FOR BREACH OF ORIGINAL LEASE.—Where the agreement between the assignee of leased premises and third persons in possession of said premises under it provides that said assignee is in entire control of the premises and the operation of same and shall have the right to supervise and direct the cultivation, harvesting, and disposition of the crops, that any failure of said third persons to carry out the instructions of said assignee shall be deemed a violation of the agreement, that in the event of the failure of said third persons to procure sufficient labor said assignee shall have the right to secure same and charge said third persons therewith and deduct the amount from their portion of the net proceeds, and that in lieu of any cash rental each party is to bear one-half of the expense of certain materials and repairs and share equally the net proceeds from the sale of all crops, such agreement does not operate to transfer and convey to said third persons all of the estate and interest of said assignee, so as to relieve the latter from liability for breach of the cove-

---

3. Liability of lessee, sublessee or assignee for rent accruing after assignment of sublease, notes, 117 **Am. St. Rep.** 99, 100; Ann. Cas. 1916E, 822; 52 **L. R. A. (N. S.)** 969.

nants of the original lease, subsequent to the execution of said agreement, and it is immaterial whether said agreement be deemed in legal effect a lease or a cropping contract.

[4] ID. — REMOVAL OF PEAR BLIGHT — PRACTICAL CONSTRUCTION OF LEASE—ASSUMPTION OF OBLIGATION — CUSTOM—EVIDENCE.—In an action by a lessor against the assignee of the lessee for damages for failure to properly care for the orchard on the demised premises, it is not error to sustain plaintiff's objection to the question, "What, if any, is the custom and usage . . . where fruit ranches are rented and nothing is said in the lease about pear blight?" where the lease contained a provision requiring the lessee to keep the trees "in a healthy condition" and, during prior years, put a practical construction upon the terms of said lease by placing the responsibility for the removal of blight upon defendant, and the latter made no objection to the assumption of that obligation.

[5] ID.—DAMAGES — PROOF — ESTOPPEL.—A party cannot be heard to complain that a less reliable method of proving damages is adopted on his own suggestion rather than a more certain method to which he objects.

[6] ID.—RIGHT OF SUPERVISION — DUTY OF LESSOR — INSTRUCTIONS.— Where the provision in a lease giving the lessor the right of supervision over the care of the orchard is for the benefit of the lessor and not for the benefit of the lessee and does not have the effect of imposing upon the lessor the burden of caring for or supervising the care of the orchard, in an action by the lessor against the lessee for damages for failure to properly care for the orchard it is not error to refuse to instruct the jury, at the request of defendant, that under the supervisory powers given plaintiff by the terms of the lease the latter was required "to use and exercise such reasonable and ordinary means and methods as are at hand, and such common knowledge and experience as he may possess, firstly, to prevent loss or injury at all, and secondly, to minimize the loss and injury as far as possible."

[7] ID.—INCONSISTENT INSTRUCTIONS—ESTOPPEL TO COMPLAIN.—Where an instruction given at the request of plaintiff is a correct statement of the law, the defendant cannot predicate error upon the fact that another instruction given at his own request is inconsistent therewith.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge. Affirmed.

The facts are stated in the opinion of the court.

Raglan Tuttle and Devlin & Devlin for Appellant.

Meredith, Landis & Chester for Respondent.

MYERS, J.—The petition herein for a transfer after decision by the district court of appeal was granted largely because it was believed that certain questions which were necessary to the determination of the instant case were involved to some extent in two other cases then pending before this court. (*In re Okahara*, 191 Cal. 353 [216 Pac. 614], and *Woodsend* v. *Chatom*, 191 Cal. 72 [214 Pac. 965].) We have arrived at substantially the same conclusions herein which were reached by the district court of appeal, and we shall make free use herein of the opinion of that court, which was prepared by Mr. Presiding Justice Finch. We quote the following therefrom:

"Plaintiff recovered judgment against defendant for the sum of $6,000 for damages alleged to have resulted from defendant's failure to perform the covenants of a lease. From this judgment the defendant appealed.

"It is admitted by the pleadings that on the fourth day of October, 1916, plaintiff leased to the Producers Fruit Company, a South Dakota corporation, for a term of five years at a cash rental, 200 acres of orchard and 30 acres of vineyard and that on the eighteenth day of January, 1918, the lessee assigned the lease to defendant. The defendant did not expressly agree to carry out or perform the terms of the lease, and its obligations thereunder were such only as to arise from the acceptance of a simple assignment and its possession of the premises under the lease. The lease provided:

" 'It is hereby agreed and made a provision of this lease that the work on the said orchard and general care of same shall be under the supervision of the lessor or his agent and the said lessee hereby agrees to abide by the same. . . .

" 'The said lessee hereby covenants and agrees . . . to occupy, till and properly prune, spray, cultivate and irrigate the orchard hereby leased, furnishing all labor at his own expense, at the proper time and dates, never at any time allowing any tree or vine to suffer for lack of water or hoeing; to remove all noxious weeds; to keep all suckers off trees and vines and said trees and vines in a healthy condition allowing none to stand in too wet soil, or for lack of proper drainage, or too much watering of berries or vegetables

planted between rows; to prune the orchard trees in accordance with directions of lessor each season; . . . to quit and surrender the said premises at the expiration of said term in as good state and condition as reasonable use and wear thereof will permit, damage by the elements excepted.' It was further agreed 'that the lessee has the privilege of subleasing said premises but that said lessee is held responsible as per the terms and conditions herein stated; . . . that in the event of there still being fruit on the property on October 4th, 1921, at the expiration of lease, the lessee shall have the privilege of harvesting same.'

"Plaintiff testified that at the time the lease was executed it was contemplated that the lessee would manage the orchard through their subtenants who would occupy the property. Japanese, presumably subtenants, had charge of the orchard in the years 1917 and 1918 and Chinese during the remainder of the term, the subtenants, however, not being the same persons during any two successive years. Pear blight made its appearance in the orchard not later than the year 1919 and increased in destructiveness to the end of the term. In the fall of 1920 the plaintiff made the contention that the defendant had broken the terms of the lease by its failure to eradicate pear blight, by improper irrigation, erosion of the soil and breaking limbs of trees, and, on the 25th of October, plaintiff wrote the defendant, calling attention to certain breaches of the lease and declaring 'I have treated and accepted these acts as a surrender and abandonment of the lease, and have taken possession of the property, and hereby elect to and do declare said lease surrendered and abandoned.' Thereafter the parties compromised their controversy over the question of damages by payment, on the third day of November, 1920, by defendant of the sum of $1500 in full compensation for 'all breaches of said lease . . . up to the date hereof.' The parties thereafter proceeded under the lease in all respects as if there had been no interruption of the term thereof.

"On the 15th day of October, 1920, the defendant executed an instrument which it alleges was a sublease of the premises to certain Chinamen, associated together as copartners, 'for the term of one cropping year from the 15th day of October, A. D. 1920 to the 4th day of October, 1921, for the share rental hereinafter mentioned.' By the terms

of the instrument the Chinese company was required, among other things, to keep and maintain all buildings, fences, corrals and improvements and personal property in good condition and repair; to perform all labor necessary in the care and cultivation of the orchard; to pick and pack the fruit grown on the premises and deliver the whole thereof to the defendant; to purchase all necessary supplies and materials from defendant; and to surrender possession of the premises to defendant at the termination of the lease. Other provisions of the instrument will be hereinafter stated.

"There is evidence to the effect that the orchard was in a healthy condition the first of the year 1921; that pear blight made its appearance about the first of May and caused great damage during the remainder of the season; that plaintiff persistently insisted upon the eradication of the blight by defendant and that the latter assumed the responsibility of removing it but did the work in so negligent a manner that many trees were destroyed by the blight and others greatly injured; that 241 eight year old trees were destroyed by the blight and 190 cut back from three to five years; that 50 quince trees died from the same cause, and that 30 twelve year old apple trees were affected; that the orchard was damaged by over irrigation in some places and by insufficient irrigation in others; that defendant failed to irrigate the orchard after the fruit was picked, resulting in a decreased production during the following year; that 185 young trees died from insufficient irrigation; that suckers were not removed; that many large limbs were broken because not propped during the fruiting season; and that no steps were taken to prevent the spread of phylloxera in the vineyard.

"Appellant contends that, being merely an assignee, it was liable only for breaches of the lease during its possession of the premises; that the so-called sublease was for the remainder of the term of the original lease and therefore constituted, in legal effect, an assignment thereof and not a sublease; that by such assignment the appellant parted with the entire estate and interest which it had in the premises and is not liable for any subsequent breach of the original lease. If the premises stated be conceded, the argument appears to be faultless. By amendment to its answer, filed at the close of plaintiff's case in chief, the defendant alleged

that it 'sublet and subleased to other and third persons, for the remainder of the term, . . . the whole of the demised premises.' The conduct of the parties shows very clearly that neither the plaintiff nor the defendant thought that the so-called sublease constituted an assignment and that both of them believed that the defendant was bound to perform the covenants of the original lease until the end of the term thereof. Plaintiff apparently did not know the terms of the agreement between the defendant and the Chinese company and at all times insisted upon performance by defendant of the covenants of the lease. Defendant at no time suggested, prior to the termination of the lease, that it was not bound to such performance but at all times assumed the burden thereof.''

The circumstances last mentioned are significant only as showing the construction of the situation resulting from the so-called sublease, which was placed thereon by the parties by their conduct. In response to appellant's contention that the sublease for the remainder of the term of the original lease was, in legal effect, an assignment, respondent contends that the so-called sublease was not a lease at all, but a mere cropping contract. The district court of appeal arrived at the conclusion that whatever it might be called it was not, in legal effect, a lease, and therefore did not operate as an assignment of the term. The contract under consideration by this court in the Okahara case, *supra*, while phrased in entirely different terminology, was nevertheless similar in nearly all essential respects to the so-called sublease herein, and we held that it amounted, at most, to a mere cropping contract, and did not operate to convey any interest in the land. But it is not necessary to go thus far in order to sustain the judgment herein in so far as this point is concerned. [1] It is elementary that a sublease, in order to operate as an assignment, must transfer to the sublessee the entire term of the original lessee in the whole or some part of the demised premises; and, of course, the assignment of the term, in order to terminate the privity of estate between the assignor and the original lessor, must transfer his term in the entire premises. The term thus referred to is not measured alone by the length of time for which it runs, but is measured as well by the extent of the premises which it covers and the nature and extent of the

estate or interest therein which it embodies. **[2]** The term which a tenant must assign, in order to terminate his privity of estate with the landlord, may be regarded as having three dimensions analogous to the special dimensions of length, breadth, and thickness. The term to be transferred to his assignee by such a tenant must be for a period of time at least equal to the remainder of the term of the original lease. It must cover all of the premises demised by the original lease, and it must include all of the estate and interest in said premises possessed by the lessee under the original lease. ''To constitute an assignment of a leasehold interest, the assignee must take precisely the same estate in the whole or in a part of the leased premises which his assignor had therein. He must not only take for the whole of the unexpired time, but he must take the whole estate, or, in other words, the whole of the term; for in the language of Blackstone, 'the word "term" does not merely signify the time specified in the lease, but the estate also and interest that passes by that lease. . . . ' If by the terms of the conveyance, be it in the form of a lease or an assignment, new conditions with a right of entry, or new causes of forfeiture are created, then the tenant holds by different tenure, and a new leasehold interest arises, which cannot be treated as an assignment or a continuation to him of the original term.'' (*Dunlap* v. *Bullard,* 131 Mass. 161, 162. See, also, *United States* v. *Hickey,* 17 Wall. (84 U. S.) 9 [21 L. Ed. 559, see, also, Rose's U. S. Notes]; *Davis* v. *Vidal,* 105 Tex. 444 [42 L. R. A. (N. S.) 1084, 151 S. W. 290]; 1 Taylor on Landlord and Tenant, 9th ed., sec. 16.)

**[3]** The so-called sublease herein provided that ''Party of the first part [defendant herein] is in entire control of the said premises and the operation of same, and shall have the right to supervise and direct the pruning, plowing, spraying, cultivating, thinning, picking and packing of said fruit, and all other work in connection with the handling of the premises and the crops of fruit grown thereon, and any failure on the part of the parties of the second part to obey and carry out the directions of the party of the first part, or its agent, shall be deemed a violation of this agreement.'' It further authorized the first party ''to exercise its own judgment in the shipping, selling and disposing of all fruits grown upon the said premises,'' and forbade

the sale or disposal of any part thereof by second parties without the consent of first party, and in the event of the failure of second parties to procure sufficient labor the first party was given the right to secure such labor and charge the second party therewith, and deduct the amount from their portion of the net returns received for said fruit. It was agreed that in lieu of any cash rental each party was to bear one-half of the expense of certain materials and repairs and share equally the net proceeds from the sale of all fruit grown upon said premises. It is thus apparent that whether the so-called sublease be deemed in legal effect a lease or a cropping contract, it at any rate did not operate to transfer and convey to the second parties named therein all of the estate and interest of the defendant in the demised premises. The defendant therefore continued to be obligated to the plaintiff upon the covenants of the original lease.

We quote again from the opinion of the district court of appeal:

[4] "The court sustained plaintiff's objection to the following question: 'What, if any, is the custom and usage in Placer County where fruit ranches are rented and nothing is said in the lease about pear blight as to the responsibility of the owner for treating the blight?' The ruling is assigned as error. The lease requires the lessee 'to keep all suckers off trees and vines and said trees and vines in a healthy condition allowing none to stand in too wet soil, for lack of proper drainage, or too much watering of berries or vegetables between rows.' Trees infected with pear blight cannot be said to be in a 'healthy condition.' It must be presumed that, from their long experience in fruit raising in Placer County, both parties to the lease were familiar with any custom relative to the removal of pear blight as between landlords and tenants. During the years 1920 and 1921, the parties put a practical construction upon the terms of the lease in question by placing the responsibility for the removal of blight upon the defendant. The defendant seems to have made no objection to the assumption of this obligation. Such practical construction, under the circumstances, is well-nigh conclusive, even if it be conceded that the lease is uncertain in this respect, which it is not.

"Appellant urges that the evidence upon the question of damages is insufficient, uncertain and conjectural. Plaintiff was asked to state the fair market value of the premises when the ranch was returned to him at the end of the term, evidently with the intention of following it up with questions as to what the market value would have been at that time but for the damage of which complaint was made. Defendant objected to the question as not calling for 'the proper basis for an estimate of damages in a case of this kind.' The court asked: 'Your insistence is that the witness shall state the amount of damages in dollars?' Counsel for defendant replied in the affirmative and the witness then testified without objection that the amount of damages suffered was between $11,000 and $12,000. The witness had previously stated in detail the elements of damage to his orchard. [5] A party cannot be heard to complain that a less reliable method of proving damages is adopted on his own suggestion rather than a more certain method to which he objects. It was further testified, without objection, that eight year old pear trees were of the value of $16 apiece, and that cutting back the growth of such trees four years reduced their value to the extent of $8 apiece; that the quince trees were of the value of $16 apiece and the young trees destroyed were worth $2.50 each; and that damage to the extent of $40 was caused by over irrigation. A simple computation shows that, based on such testimony, the damages suffered largely exceeded the sum of $6,000, the amount of the judgment, leaving out of consideration all other elements of damage covered by the evidence.

"Appellant contends that it was not liable for damages caused by phylloxera in the vineyard. It appears from the testimony that the only effective remedy for the eradication of phylloxera is to remove the affected vines, and, in order to prevent its spread, to remove two or three adjacent rows of healthy vines. In the year 1920 the defendant removed about an acre of affected vines. It appears from plaintiff's testimony that vines adjacent to those removed in 1920 showed the effects of phylloxera in the early part of 1921 and, since vines do not show such effect for a considerable time after becoming infested, it is to be inferred that the pest must have attacked such vines prior to the settlement of November 3, 1920, and consequently that the damages to

the vines were included in that settlement. The complaint alleges that in the spring of 1921 between six and seven acres of the vines became affected, that plaintiff requested defendant to take the necessary steps to exterminate the pest and that defendant did not do so 'and as a result thereof said vineyard on said 6 or 7 acres has been destroyed and the vines thereon will have to be taken up and removed.' Since the sole remedy for phylloxera is to remove the vines, the only damage alleged in this connection is the trifling cost of removal. Failure to remove the affected vines may have caused other vines to become infested, but there is no allegation to that effect in the complaint. As stated, however, other elements of damage, as shown by the evidence, were more than sufficient to make up the amount of the judgment.

"The appellant claims that the court committed error in permitting plaintiff to testify, over defendant's objection, that the value of the fruit crop on the premises June 3, 1921, was about $8,000 or $10,000. This testimony was admitted in rebuttal of defendant's attempt, in cross-examination of plaintiff, to show that plaintiff permitted defendant to retain possession of the premises after breaches of the lease because the rental amounted to more than the value of the crop. In such cross-examination plaintiff testified: 'There was plenty there with which to pay the rent if I did put them off.' It thus appears that the testimony, admitted over objection, was substantially the same as that theretofore brought out by defendant. In any event the matter objected to was unimportant.

[6] "Defendant requested the court to instruct the jury that under the supervisory powers given the plaintiff by the terms of the lease he was required to 'use and exercise such reasonable and ordinary means and methods as are at hand, and such common knowledge and experience as he may possess, firstly, to prevent loss or injury at all, and secondly, to minimize the loss and injury as far as possible.' The court refused to give the instruction on the authority of *Doi* v. *McMurry*, 41 Cal. App. 515 [183 Pac. 211]. The court instructed the jury, substantially as requested by the defendant in another proposed instruction, as follows: 'In one of the terms and provisions of the lease and agreement it is provided: "It is hereby agreed and made a provision

of this lease that the work on the said orchard and the general care of the same shall be under the supervision of the lessor, and the said lessee hereby agrees to abide by the same.'' This provision is intended to protect and preserve the right and estate of the lessor, and if you find from all the evidence, either that the lessor entirely neglected such supervision, or that he failed to use such usual and ordinary means as were at hand, or such skill or experience as he possessed, concerning the supervision of such general work upon the premises, and for which plaintiff sues to recover, and that the damage and injury were caused by such failure and omission, your verdict must be in favor of the defendant.' ''

The instruction given was more favorable to defendant than was warranted by the situation. The other one was properly refused because it might have caused the jury to believe that the duty of caring for the orchard rested primarily upon plaintiff. The provision in the lease giving plaintiff the right of supervision over the care of the orchard was for the benefit of plaintiff and not for the benefit of the lessee. It did not have the effect of imposing upon plaintiff the burden of caring for or supervising the care of the orchard. (*Ash* v. *Soo Sing Lung,* 177 Cal. 356, 362 [170 Pac. 843]; *Doi* v. *McMurry, supra.*)

[7] At plaintiff's request the court gave the following instruction: 'The lease of the premises provided that the work on the orchard and its general care shall be under the supervision of the plaintiff. I instruct you that this provision did not release defendant from its obligation to carry out each and all of the terms of the lease while it was a tenant thereunder, and did not release defendant from liability for any damages caused plaintiff by defendant, by defendant's failure to carry out the terms of the lease, if it so failed.' Appellant does not contend that this instruction is an incorrect statement of the law but argues that the instruction last considered is inconsistent therewith. A party cannot complain of an instruction given at his own request on the ground that it is inconsistent with a correct instruction given at the request of the other party.'' The giving of conflicting instructions upon a material point is undoubtedly error, but whether or not such error is prejudicial depends upon the particular circumstances of each

case. In the instant case appellant cannot complain of the instruction which was given at plaintiff's request, because the same is a correct statement of the law. Neither can appellant complain of the giving of the other instruction, for the reason that any error therein must operate to appellant's advantage. If the jurors followed the one instruction their deliberations were correctly guided. If they followed the other the appellant must have gained an undue advantage therefrom. We find no error in the record which in our judgment could have operated to the substantial prejudice of appellant.

The judgment is affirmed.

Lennon, J., Wilbur, C. J., Kerrigan, J., and Seawell, J., concurred.