[No. D039853. Fourth Dist., Div. One. Aug. 8, 2003.]

DEL TACO, INC., Plaintiff and Appellant, v.
UNIVERSITY REAL ESTATE PARTNERSHIP V, Defendant and
Respondent.

**COUNSEL**

Jay R. Saltsman for Plaintiff and Appellant.

Seltzer, Caplan, McMahon & Vitek and Lee E. Hejmanowski for Defendant and Respondent.

## Opinion

**HUFFMAN, Acting P. J.**—After a major sewer line repair was required for its business that was operated on leased premises, plaintiff and appellant Del Taco, Inc. (Del Taco), sued its former landlord, defendant and respondent University Real Estate Partnership V, a limited partnership (University). Del Taco sought declaratory relief concerning its rights under the original ground lease agreement and the obligations to pay for the repairs. Del Taco also sued its current landlord, 1033 Third Street Corporation (Third Street), which is not a party to this appeal. The underlying action is still pending against Third Street.

University brought a motion for summary judgment, contending there were no triable issues of material fact and it was entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.) The motion was granted and Del Taco appeals, contending the trial court erred in finding that as to University, there was no potential liability nor any triable issues of fact under either the express or implied covenants in the lease agreement. These arguments lack merit and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Del Taco entered into a ground lease agreement with University, providing that Del Taco would construct and operate a fast food restaurant within a shopping center. Exhibit B to the lease provided a map of the premises. Exhibit D to the lease required University to provide certain utilities to Del Taco's designated points of connection, "with capacities sufficient for Del Taco's intended use." Specifically, Exhibit D required University to provide a four-inch sanitary sewer lateral line. Del Taco's new sewer connection tied into a lateral line that had been used by a previous restaurant tenant at the site. The lease required the landlord to maintain and repair the common areas during the term of the lease, and defined common areas as including those parking areas and walkways that were subject to the rights of all tenants of the shopping center.

The restaurant was constructed and began operations in 1997. In March 1998, approximately one and one-half years after Del Taco began its operations at the site, a sewage blockage occurred and was repaired through the removal of congealed grease. The grease trap had not been cleaned out as part of Del Taco's maintenance of its premises. University's property manager sent the $350 bill to Del Taco, which paid it. At her deposition, she identified the 260 foot sewer line as running under a common area parking lot. Only Del Taco was using that line.

In May 1998, University sold the shopping center, including these leased premises, to Third Street.

In June 2000, the sewer line serving Del Taco failed and had to be repaired. The job logs for the repair reported that the stoppage was due to faulty construction in installation, including improper grading, separations in the line, improper assembly, and foreign material on top of the line. Del Taco paid over $80,000 for this repair.

In February 2001, Del Taco filed this action for declaratory relief against University and Third Street, seeking to hold them responsible for the costs of the repair under the terms of the leases.

In October 2001, University brought a motion for summary judgment, contending there were no express or implied warranties about the sewer line which would place it under a duty to maintain or repair it, and that to the extent there were any express warranties regarding the construction of the line, they only extended to its four-inch size, and there was no dispute that the proper size was installed.

In opposition to the summary judgment, Del Taco argued there were triable issues of fact about University's breach of the lease, particularly with reference to the implied covenant of good faith and fair dealing with regard to the provision of the sewer line under the lease. Del Taco took the position that the sewer line was improperly constructed and therefore it could not have expressly or impliedly accepted the condition of the property as conveyed to it through the lease.

After the trial court took the motion under submission, it issued a ruling first stating that unless there is an express covenant set forth in a lease, "a landlord is not bound to prepare nonresidential premises for the tenant's use, or to keep them in repair, except to the extent to which he retains control over an area used in common by the public or other tenants. [Citation.]" This ruling analyzed the duty of a transferor of an interest in leased property, as follows: If, immediately before the transfer, the transferor was under an obligation to perform an express promise contained in a lease that touches and concerns the transferred interest, that transferor will continue to be obligated after the transfer, if the obligation rests on privity of contract, and the transferor will not be relieved of the obligation by the person entitled to enforce it.

In applying these rules, the trial court's ruling further noted that at oral argument, Del Taco had conceded University was not expressly obligated to maintain and repair the sewer line, but was alternatively contending University breached the lease contract by not providing an "adequate" sewer line. This alternative contention was rejected, as follows: "The lease required University to provide a 4″ sanitary sewer lateral. There is no dispute that such

a sewer line was installed. Further, the line did not have to be replaced for more than a year after University sold the property. To the extent plaintiff argues University was required to do more than provide a 4″ sewer line, the plaintiff would be implying conditions that are not expressed in the lease. As noted above, University cannot be liable for implied obligations after it is no longer in privity with the plaintiff."

Thereafter, Del Taco brought a motion for reconsideration, new trial, or to set aside the ruling. This motion was denied. The court reasoned as follows: "Exhibit D to the lease required University to provide certain utilities 'with capacities sufficient for Del Taco's intended use.' Plaintiff contends the sewer line 'was defective, was not installed or constructed properly, and, therefore, was not sufficient for Del Taco's intended use.' It appears plaintiff is focusing on 'sufficient' to the exclusion of 'capacity.' For example, Exhibit D also calls for '600 amp capacity' and 'natural gas capacity of minimum 2100 CFH.' Thus, capacities sufficient for Del Taco's intended use in this context calls for University to provide a 4″ sewer line as specified in the lease."

Summary judgment was entered for University in accordance with the order granting the motion. Del Taco appeals.

DISCUSSION

I

INTRODUCTION AND SUMMARY JUDGMENT<br>STANDARDS

Del Taco relies on both express and implied lease covenants to support its declaratory relief request to hold University responsible for payment of the repair costs for the sewer line. It contends that triable issues of fact exist concerning such a continuing duty, to the extent that the sewer line ran under the common area parking lot, and the landlord was responsible under the lease for maintaining the common areas. Further, to the extent that the lease contains an express warranty to provide a sewer line with sufficient capacity for its intended use, Del Taco argues this will support an implied lease covenant that this sewer line was to be properly constructed and installed. As a matter of law, it argues that both these express and implied lease covenants remained binding on University after its transfer of the property.

Our analysis of these arguments begins with Code of Civil Procedure section 437c, subdivision (o)(1): A summary judgment motion is appropriate if a "cause of action has no merit" because "[o]ne or more of the elements of the cause of action cannot be separately established ...." (*Ibid.*) "The motion

... shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...." (Code Civ. Proc., § 437c, subd. (c).) On appeal, interpretation of a document such as a lease will involve only questions of law, where no extrinsic evidence was admitted by the trial court. (*Earp v. Earp* (1991) 231 Cal.App.3d 1008, 1012 [283 Cal.Rptr. 43].)

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*), in the course of clarifying the law that courts must apply in ruling on motions for summary judgment, the Supreme Court reiterated that the trial court "must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Id.* at p. 843.) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

█ Interpretation of a ground lease agreement, including an implied covenant of good faith and fair dealing, will present a question of law subject to de novo review, absent conflicting evidence. (*Ocean Services Corp. v. Ventura Port Dist.* (1993) 15 Cal.App.4th 1762, 1780 [19 Cal.Rptr.2d 750].) "We are guided by the well-established rule that '... the law implies in every contract a covenant of good faith and fair dealing. [Citations.] Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. [Citation.]' [Citation.] In California, the implied duty of good faith and fair dealing exists in virtually every commercial lease. [Citation.]" (*Ibid.*) Here, the parties agree on the essential factual background, and we therefore turn to the lease language to determine what express or implied obligations were imposed on University concerning the sewer line repairs. The parties' dealings with each other are also illustrative, because when they have demonstrated through their conduct "that they knew what they were talking about the courts should enforce that intent." (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 754 [8 Cal.Rptr. 427, 356 P.2d 171].)

## II

### EXPRESS AND IMPLIED LEASE COVENANTS

Both parties rely on the same authorities as governing the resolution of these issues about interpretation of the ground lease and any duties it imposed upon University. Del Taco argues that the express covenants in the lease (i.e., to maintain and repair the common area during the term of the lease, and to provide utilities of sufficient capacity as specified in the lease), will alone support a continuing duty on University to provide a properly constructed, maintained, and repaired sewer line. Alternatively, Del Taco contends there are several implied covenants in the lease, arising from these express covenants, which will support its claims against University. These include the implied covenant of the duty of good faith and fair dealing to implement the purposes of the lease. Del Taco would also find there are implied covenants arising from the duty to maintain the common area, and/or arising from the lease provision for a four-inch sewer line, to ensure that the sewer line was properly constructed and installed, and these obligations survived the sale of the property.

The duties of a commercial landlord regarding preparing or maintaining the premises are explained in a treatise, 7 Miller & Starr, California Real Estate (3d ed. 1997) section 19:118, page 360 (Miller & Starr), as follows:

"In the absence of an express covenant in the lease, the landlord is not obligated to prepare nonresidential premises for the tenant's use, or to keep them in repair, except to the extent that he or she retains control over an area used in common by the public or other tenants. [¶] There is no implied covenant by the landlord that nonresidential premises leased are tenantable, or in any particular condition, or fit for the purpose for which they are leased or intended to be used by the tenant, or that they will continue to be fit for such purposes, even though the landlord knows the nature of the use intended."

In the same work, 8 Miller & Starr, section 24.1, page 5, the rules relating to ongoing enforcement of deed or lease covenants are outlined. Such covenants will generally be enforceable "only by and against the original parties and by their legal successors in interest by privity of contract. While a personal covenant only obligates the original parties, a covenant that runs with the land is binding on successive owners. The issue of whether the covenant 'runs with the land' arises when the covenantor or the covenantee, or both, convey their estates in the property and the dispute is between successors of either the covenantor or the covenantee or both." (*Ibid.*, fns. omitted.)

Where a party to a lease agreement is seeking to enforce a lease covenant against a former owner of the property, such as a former lessor, the issue will arise whether there remains any privity of contract or privity of estate between the original parties to the lease.　　In *Barkhaus v. Producers' Fruit Co.* (1923) 192 Cal. 200, 205–206 [219 P. 435], it is explained that the parties to a lease may terminate their privity of estate if certain criteria are met, including the transfer of the entire term of the lease, the entire physical premises, and the entire interest in the property. This issue of the extent of the relationship of a landlord and tenant is further addressed in the Restatement Second of Property, Landlord and Tenant, in section 16.1, subdivision (1), entitled "Obligation Created by an Express Promise-Burden of Performance After Transfer," as follows:

"(1) A transferor of an interest in leased property, who immediately before the transfer is obligated to perform an express promise contained in the lease that *touches and concerns* the transferred interest, *continues to be obligated after the transfer if:*

"*(a) the obligation rests on privity of contract, and he is not relieved of the obligation by the person entitled to enforce it; or*

"*(b) the obligation rests solely on privity of estate and the transfer does not terminate his privity of estate with the person entitled to enforce the obligation,* and that person does not relieve him of the obligation." (Rest.2d Property, § 16.1, subd. (1), p. 115, italics added.)

In the comments to this section, this "*touch and concern test,*" is explained. "A promise by the landlord touches and concerns his interest in the leased property to the extent its performance is not related to other property and affects the use and enjoyment of the leased property by the tenant." (Rest.2d Property, § 16.1, subd. (1), com. b, pp. 116–117.) On the other hand, a promise that is personal to the promisor does not meet the touch and concern test, and the intentions of the parties will be considered in determining whether it survives after the promisor's interest in the leased property is transferred. (*Ibid.*)

In addition to the above rules, the principle set forth in the Restatement Second of Property, section 16.3, subdivision (1), page 145, entitled "Obligations That Do Not Rest on an Express Promise—Burden and Benefit of Performance After Transfer," comes into play here, with respect to implied promises: "(1) *An obligation that is imposed on one of the parties to a lease without the aid of an express promise may rest on an implied promise found to exist from the facts and circumstances of the lease transaction.* That implied promise is treated the same as an express promise in applying the rules of §§ 16.1 and 16.2." (Italics added.)

Comment a to section 16.3, Restatement Second of Property, pages 145–146, explains the basis for this provision: "An obligation rests on an implied promise when its existence is determined on the basis of the facts and circumstances surrounding the lease transaction. If an implied promise is found to exist, the facts and circumstances on which it is based may justify the conclusion that the implied promise is personal to the promisor so that the burden of the promise will not run to a transferee of the burdened interest in the leased property, or that the implied promise obligates the promisor only as long as he remains in privity of estate with the person entitled to enforce the promise." Comment b continues, "In general, the accomplishment of the objectives behind the imposition of the obligations that inhere in the landlord-tenant relationship does not require that the transferor who moves out of privity of estate with the person entitled to enforce the obligation be liable for a breach of the obligation which occurs after the transfer. He does continue liable for a breach of the obligation which occurs before the transfer." (Rest.2d Property, § 16.3, com. b, p. 147.)

III

ANALYSIS

A

Issues Presented

Where, as here, there is no conflicting extrinsic evidence, we may interpret the lease terms as a matter of law, to determine if Del Taco made an adequate showing of triable issues of material fact "in accordance with the applicable standard of proof." (*Aguilar, supra,* 25 Cal.4th at p. 850.) Del Taco takes the position that the lease was breached at a time when University was still responsible for its provisions (i.e., when the sewer line was first provided), and these obligations under the implied covenant of good faith and fair dealing survived the sale of the subject property. Additionally, its oral argument letter contends that Del Taco never had knowledge that the sewer line was improperly constructed, such that it could not have expressly or impliedly accepted the provision of the sewer line to it as part of the lease.

These arguments must be read in light of the issues framed by the pleadings here, seeking declaratory relief regarding the obligations under the lease. This is not a tort action for negligence nor a construction defect action for breach of warranty or other theories against a developer. We must confine our analysis to determining University's duties under the lease.

B

Express Covenants

Del Taco first argues that the express covenants in the lease (i.e., to maintain and repair the common area during the term of the lease, and to provide utilities of sufficient capacity as specified in the lease), will support a continuing duty on University to provide a properly constructed, maintained, and repaired sewer line. The facts were undisputed that the sewer line ran under the common area parking lot, but was connected at Del Taco's newly constructed leased premises, and had been used before by the previous tenant and operated without incident for the first year and one-half of Del Taco's lease period.

■ The lease contains terms expressly promising to maintain the common area, as defined, during the term of the lease, and to provide a four-inch capacity sewer line. However, these terms do not support the imposition of an ongoing obligation to maintain and repair the sewer line, past the transfer of ownership of the property, which terminated the term of the lease insofar as University was concerned. As set forth in the treatise cited, Miller & Starr, where there is no particular provision in a lease to prepare nonresidential premises for the tenant's use, or to keep them in repair, a landlord is not obligated to do so, "except to the extent that he or she retains control over an area used in common by the public or other tenants." (Miller & Starr, *supra*, § 19:118, p. 360.) Del Taco has not made a factual showing that the sewer problems that arose were attributable to University's failure to maintain the common area within University's control, during the term of the lease. Nor does the lease language concerning sufficient capacity of the sewer line support an interpretation that any certain warranty of quality or longevity was being made by the lessor.

■ Once University sold the land, as a former landlord it would continue to be bound by the express promises contained in the lease that touched and concerned the transferred interest, if: "*(a) the obligation rests on privity of contract, and [it] is not relieved of the obligation by the person entitled to enforce it; or [¶] (b) the obligation rests solely on privity of estate and the transfer does not terminate [its] privity of estate with the person entitled to enforce the obligation ....*" (Rest.2d Property, § 16.1, subd. (1), p. 115, italics added.) It is clear that through University's sale of the property, it terminated its privity of estate with Del Taco, due to the transfer of the entire term of the lease, the entire physical premises, and the entire interest in the property. (*Barkhaus v. Producers' Fruit Co., supra,* 192 Cal. 200, 205–206.) Del Taco has made no showing to support its theory that University remained in privity of estate with it after the transfer of the property to Third Avenue. Also, the

nature of the express covenants in the lease do not support a theory that sufficient privity of contract existed to connect these particular express promises to University as personal to it, or to hold it liable on an ongoing basis to Del Taco, past the time of transfer of the leasehold property. (Rest.2d Property, § 16.1, subd. (1), pp. 115–116.)

■ Moreover, the first time the sewer line had to be repaired through the removal of congealed grease, the cause was determined to be Del Taco's neglect to clean out the grease trap on its premises. University's property manager sent the $350 bill to Del Taco, which paid it. We may read the express provisions in the contract concerning maintenance of the common area and provision of a sufficient capacity sewer line in light of this prior interpretation by the parties of their respective obligations regarding maintenance of the sewer line. (*Crestview Cemetery Assn. v. Dieden, supra,* 54 Cal.2d at p. 754.) These express covenants do not support Del Taco's arguments.

## C

### Implied Covenants

Del Taco's alternative theory is that there are several implied covenants in the lease, arising from the lease as a whole or from its express covenants, whose breach by University should remain actionable after the transfer of the property. However, this theory will not withstand scrutiny. Generally, as set forth in the Restatement Second of Property, *"An obligation that is imposed on one of the parties to a lease without the aid of an express promise may rest on an implied promise found to exist from the facts and circumstances of the lease transaction."* (Rest.2d Property, § 16.3, subd. (1), p. 145, italics added.) This rule would require the facts and circumstances of this lease transaction to support the making of an implied promise to provide lifetime maintenance and repair of a sewer line that was taken over from a previous restaurant tenant. The undisputed facts of this transaction do not give rise to reasonable inferences that would satisfy the test set forth in the Restatement Second of Property, section 16.3, to show that with respect to any implied promises to maintain the sewer line in the future, they arose *"from the facts and circumstances of the lease transaction,"* so as to create an obligation on the landlord to provide a warranty of quality for the line, on an implied basis, that would survive transfer of the subject property. The implied duty of good faith and fair dealing has not been extended this far, and we have been given no reason to extend it farther in this leasehold context.

Rather, as set forth in the Restatement Second of Property, section 16.3, comment b, page 147, "In general, the accomplishment of the objectives

behind the imposition of the obligations that inhere in the landlord-tenant relationship *does not require that the transferor who moves out of privity of estate with the person entitled to enforce the obligation be liable for a breach of the obligation which occurs after the transfer.*" (Italics added.) There are no facts provided to show that any breach of the obligation to provide a sewer line with sufficient capacity, or to maintain the common area, or any implied promises that arose from those obligations, occurred before the transfer of the property.  Only express lease covenants that created ongoing, personal obligations on the part of the landlord, or that remained binding through privity of estate, would remain enforceable after the property was transferred away. (Rest.2d Property, § 16.1, subd. (1), p. 115.) Del Taco has not provided any authority or logical reason to impose a similar duty on a former landlord based on implied lease covenants, even when they are alleged to have arisen originally from express lease covenants.

## DISPOSITION

The judgment is affirmed. Costs to University.

Nares, J., and Haller, J., concurred.