Filed 8/3/16  Weinstock Porter Dev. v. Teixeira Farms CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| WEINSTOCK PORTER DEVELOPMENT, LLC et al., | 2d Civil No. B253455 (Super. Ct. No. 1377486) (Santa Barbara County) |
| Plaintiffs and Appellants, | |
| v. | OPINION ON REHEARING |
| TEIXEIRA FARMS, INC., | |
| Defendant and Respondent. | |

In 2005, Weinstock Porter Development, LLC and 23676-23726 Malibu Road, LLC (collectively, WP) purchased a parcel of land from Teixeira Farms, Inc. (TFI).  The land was contaminated from oil produced by the Union Oil Company of California (Unocal), one of TFI's former oil and mineral lessees.  In 2008 WP and TFI agreed that, in exchange for $200,000 and WP's agreement to purchase "environmental insurance," WP would release TFI from all claims arising from the 2005 sale.  Three years later WP sought rescission of this release, alleging that TFI had concealed or failed to disclose the fact that it had contractually released Unocal from any and all claims TFI and its successors and assigns may have against it.

In a detailed and thorough decision, the trial judge ruled in favor of TFI, finding that a rescission was not justified.  WP appeals the trial court's judgment and subsequent award of contractual attorneys' fees.  We affirm.

FACTS AND PROCEDURAL HISTORY

WP purchased vacant land in Santa Maria from TFI with the intent of developing it into townhomes.  WP knew that the soil was contaminated from Unocal's past attempts to produce oil, but WP did not know the full nature and extent of the damage.

After the sale, WP discovered additional contamination.  It sought compensation from TFI, which agreed to pay $200,000 for remediation and environmental insurance.  In exchange, WP gave "a full and complete release from any and all liability, obligation and cost" to TFI "and its successors, assigns, representatives, stockholders, directors, officers, principals, employees, agents, parent and subsidiary organizations, and affiliates, and all other persons and associations, known or unknown" from "all rights, claims, demands, actions, and judgments which [WP] ever had, or now have, or may have against [them] related to the [the property sale and environmental damage]" (TFI Release).  As part of the TFI Release, WP waived application of Civil Code section 1542 and "expressly acknowledge[d] that the significance and consequences of this waiver . . . is that if [it] should eventually suffer additional damage . . . , [it] will not be permitted to make any claim against any other party for those damages."[1]

WP then sought compensation from Unocal, which refused to negotiate.  Unbeknownst to WP, before TFI sold the land it agreed to "release, on behalf of [TFI] and its future assigns, all environmental claims against [Unocal]"

---

[1] Civil Code section 1542 provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(Unocal Release).[2]  Unocal gave WP a copy of the Unocal Release, asserting that it precluded WP "from making any claims against Unocal."

WP sued TFI for more than $9 million in damages from the contamination.  Because the TFI Release would bar all of its claims, WP sought to rescind the agreement based on TFI's concealment of the Unocal Release.[3]  Following a bench trial on the rescission issue, the trial court found that by entering into the TFI Release, WP agreed to release "all other persons" and "any other party," including Unocal, and that TFI's failure to disclose its separate agreement with Unocal to the same effect was therefore not a material omission.  Accordingly, the trial court ruled that WP could not rescind the TFI Release and entered judgment in favor of TFI.

After WP filed its notice of appeal, TFI sought attorneys' fees pursuant to the TFI Release and the real estate purchase and sale agreement (PSA).  The trial court awarded $95,707 in attorneys' fees and $1,406.50 in costs.

WP contends that the trial court erred by ruling it was not entitled to rescission.  In addition, it challenges the fee award on the grounds that (1) the trial court lacked jurisdiction to enter the award after WP filed its notice of appeal; (2) neither the PSA nor the TFI Release authorizes an award for a rescission action; (3) the fees are excessive; (4) the fees paid by TFI's insurer before it withdrew its defense are unrecoverable; and (5) the contractual fee provisions did not authorize fees to more than one law firm or incurred before the complaint was filed.

---

[2] The Unocal Release was an exhibit at trial but was not entered into evidence and is not in the appellate record.  We rely on WP's characterization of the agreement.

[3] WP also sought rescission based on intentional misrepresentation, asserting that during the TFI Release negotiations, TFI stated that WP "could still pursue environmental claims against Unocal after execution of the Unocal Release."  The trial court rejected this claim, finding WP's sole witness that TFI made such a statement not credible.  WP does not challenge this ruling on appeal.

3

DISCUSSION

*Rescission of the TFI Release*

"A party seeking rescission based on fraudulent nondisclosure must show (1) the defendant failed to disclose a *material* fact which he knew or believed to be true, and (2) the defendant had a duty to disclose that fact. [Citation.]" (*San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1055, italics added.) A fact is material if "'a reasonable [person] would attach importance to its existence or nonexistence in determining his [or her] choice of action in the transaction in question.'" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977.) Materiality is ordinarily a question of fact unless the nondisclosure "'is so obviously unimportant'" that the trier of fact could not reasonably find that a reasonable person would have been influenced by it. (*Ibid.*) The trial court so found.

We agree with the trial court that *if*, as a defense to liability, Unocal can enforce against WP both the Unocal Release and the TFI Release, then TFI's failure to disclose the former was not a material omission that would entitle WP to rescind the latter. However, we take a different approach. Since Unocal is not a party to this litigation, we decline to determine its rights vis-à-vis WP, particularly since Unocal's standing to enforce the TFI Release is doubtful on this record. Although the agreement's broad language purports to release "any other party" and "all other persons and associations, known and unknown," "it will seldom be sufficient for the third party simply to rely on a literal application of the terms of the release." (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 349.) Here, "the circumstances of the contracting parties' negotiations" provide little if any support "to determine [that the] third party not named in the release"—Unocal—"was an intended beneficiary." (*Ibid.*)

4

We conclude, however, that WP is not entitled to rescission. Either (1) the Unocal Release is unenforceable against WP,[4] in which case its concealment was not material to the TFI Release, or (2) WP had notice of the Unocal Release, in which case there was no concealment.

The Unocal Release is a contract between TFI and Unocal. (See *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360.) Although it purports to release Unocal from liability to future purchasers of the property such as WP, WP is not a party to the agreement or in privity of contract with one. Absent an applicable law to the contrary, WP "is not bound by releases to which it has not consented." (*Aetna Casualty & Surety Co. v. Board of Administration* (1979) 89 Cal.App.3d 766, 770; see *E.E.O.C. v. Waffle House, Inc.* (2002) 534 U.S. 279, 294 ["It goes without saying that a contract cannot bind a nonparty"].) The parties "cite no authority, and we know of none, holding the transfer of title to real property also transfers rights [and obligations] the seller may have had under [a] contract with his [lessee]." (*Drake v. Martin* (1994) 30 Cal.App.4th 984, 994-995.) If the Unocal Release is unenforceable against WP, its existence could not have been material to the TFI Release.

It may be that the Unocal Release is effective against WP as a burden attached to the land.[5] (See *Del Taco, Inc. v. University Real Estate Partnership V* (2003) 111 Cal.App.4th 16, 23 ["While a personal covenant only obligates the

---

[4] We granted rehearing so that the parties could brief "[w]hether the Unocal Release can be enforced against [WP] without [its] having notice of the agreement at the time [it] purchased the property." WP's supplemental brief does not address this issue. WP fails to identify a legal basis upon which it might be bound by the terms of the Unocal Release.

[5] We do not "assume[] that the Unocal Release is a 'covenant'" that runs with the land. Rather, we conclude that if it is possible for TFI and Unocal to burden the land with a covenant not to sue Unocal—a proposition we need not decide—such a covenant would be unenforceable against subsequent landowners who took title without notice of the restriction.

5

original parties, a covenant that runs with the land is binding on successive owners"].) For that to be true, WP had to have taken the property with actual or constructive notice of the release. (See, e.g., Civ. Code, § 1468 [instrument containing covenant running with the land must be recorded]; *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 375 ["Restrictions that do not meet the requirements of covenants running with the land may be enforceable as equitable servitudes provided the person bound by the restrictions had notice of their existence"].) Notice, however, would defeat WP's concealment claim. (See *San Diego Hospice v. County of San Diego*, *supra*, 31 Cal.App.4th at p. 1055 ["The duty to disclose arises when two elements are present: (1) the material fact is known to (or accessible only to) the defendant; and (2) *the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact*"], original italics, fn. omitted.)

Because the Unocal Release was either known to WP when it purchased the property or was not material to its decision, TFI's failure to disclose the agreement is not a basis for rescission. The trial court properly entered judgment in favor of TFI.

*Attorneys' Fee Award*

WP challenges several aspects of the trial court's award of attorneys' fees. First, it contends that the trial court lacked jurisdiction to consider and rule on TFI's fee motion. To the contrary, "the filing of a notice of appeal does not deprive the trial court of jurisdiction to award attorney fees as costs post trial" because such an award "is a collateral matter which is embraced in the action but is not affected by the order from which an appeal is taken." (*Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 368, 369, citing Code Civ. Proc., § 916.)

Second, WP contends that attorneys' fees are unavailable under the TFI Release, which authorizes an award to the prevailing party "[i]f it is necessary . . . to institute an action to enforce any right granted hereunder or to redress the breach of any provision hereof." WP argues that this clause does not

6

apply because its action sought rescission of the release rather than to enforce its terms. This argument might have force if there were not an identically worded fee provision in the PSA, upon which WP "institute[d] an action . . . to redress breach." (Cf. *Gil v. Mansano* (2004) 121 Cal.App.4th 739 [no fees where sale agreement did not contain fee provision and release providing for fees was asserted only as affirmative defense].)[6] Accordingly, we reject WP's contention that the contractual language does not support a fee award.

Third, WP asserts that the number of hours billed and the rates charged by TFI's attorneys at Carmel & Naccasha (C&N) are excessive. The trial court did not abuse its discretion by implicitly finding that the 407 attorney hours and 35 paralegal hours C&N spent on the case are reasonable. The amount of documents that TFI produced to WP is irrelevant to the amount of time C&N spent on document review. Nor did the trial court abuse its discretion in implicitly finding that C&N's rates were reasonable. It is true that the rates increased significantly after TFI's insurer, Star Meadowbrook, withdrew its defense and TFI had to negotiate new rates with C&N under a separate retainer agreement. The rate increase was reasonable, however, because the original rates were "negotiated insurance rates" that were "well below . . . standard rates for private clients." (Underscoring omitted.)

Fourth, WP claims that TFI is not entitled to recover fees paid by Star Meadowbrook. WP speculates that Star Meadowbrook did not and may not be able to recover these fees from TFI because there was at least a possibility that the fees were covered under the insurance contract. WP provides no evidence, such as the

---

[6] Justice Armstrong's dissent in *Gil* argued that the contractual term "action" should be construed broadly to encompass affirmative defenses. In *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 276, the unanimous panel adopted Justice Armstrong's analysis, disagreeing with the *Gil* majority and a similar case, *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698. Given the important factual difference between this case and *Gil*, we need not decide the issue that has divided courts in this Appellate District.

insurance contract, to substantiate its theory. More importantly, WP has no stake in whether TFI reimburses Star Meadowbrook for the fees. Even if, as WP supposes, the trial court's award "allowed TFI an unwarranted double recovery," that is a matter between TFI and Star Meadowbrook in which WP has no standing to intervene. "It is [WP] which seeks a windfall." (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1193.) WP is "not entitled to avoid [its] contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that [it] sued a defendant who obtained insurance coverage providing a defense." (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1410.)

Fifth, WP contends that TFI cannot recover fees for work performed by a second law firm, Kirk & Simas (K&S), which initially represented TFI and later assisted C&N with the defense. WP challenges $1,906 in fees awarded for K&S's work during the three months before WP filed the complaint. While the fee provision covers only fees "incurred in prosecuting [the] action and the enforcement of any judgment," nothing limits the time frame in which the work must be performed. Thus, it is the nature of the work that is dispositive. K&S's first charge was for a "call with client regarding response to complaint" and a communication with "opposing counsel" that "service would be accepted on client's behalf." This was work done "prosecuting" the action, as was the remainder of the work at issue.

WP also argues that K&S was not entitled to fees for work done after C&N took over the case. It maintains that "[n]othing in the TFI Release (or the PSA) suggests that retaining two law firms is necessary or appropriate." The PSA, however, provides for "reasonable" attorneys' fees. WP offers no explanation why it was unreasonable for C&N to consult with the firm that initially handled its client's defense and in particular the K&S attorney who helped draft the agreements in dispute.

8

DISPOSITION

The judgment is affirmed. The order awarding attorneys' fees is affirmed. Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.


9

James F. Rigali, Judge

Superior Court County of Santa Barbara

_____

Stiles Law Group and Michael J. Stiles, for Plaintiffs and Appellants.

Carmel & Naccasha and Michael M. McMahon, for Defendant and Respondent.